**Michael A. SWENSEN, Appellant,**

v.

**MUNICIPALITY OF ANCHORAGE, Appellee.**

**No. 4675.**

Supreme Court of Alaska.

Sept. 26, 1980.

C. Walter Ebell, Cole, Hartig, Rhodes, Norman & Mahoney, Kodiak, for appellant.

Karen L. Russell, Municipal Prosecutor, Anchorage, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DI-MOND, Senior Justice.

## OPINION

RABINOWITZ, Chief Justice.

Michael Swensen contends that his guilty plea was accepted by the district court under procedures which did not comport with due process and Criminal Rule 11.[1] Appellant was arrested on January 8, 1976, for operating a motor vehicle while under the influence of intoxicants (OMVI), a violation of Anchorage Ordinance 9.28.020(A). Swensen was arraigned in district court the following day and, unrepresented by counsel, entered a plea of guilty.

---

1. Alaska R.Crim.P. 11 reads in relevant part:

   (c) *Pleas of Guilty or Nolo Contendere.* The court shall not accept a plea of guilty or nolo contendere from a defendant without first addressing the defendant personally and

   (1) *determining* that he understands the nature of the charge; and

   (2) informing him that by his plea of guilty or nolo contendere he waives his right to trial by jury or trial by a judge and the right to be confronted with the witnesses against him; and

   (3) informing him:

   (i) of the mandatory minimum punishment, if any, and the maximum possible punishment provided by the statute defining the offense to which the plea is offered, and

   (ii) that the defendant has the right to plead not guilty or to persist in that plea if it has already been made, or to plead guilty.

   .      .      .      .      .

   (f) *Determining the Accuracy of Plea.* The court shall not enter a judgment upon a plea of guilty without first being satisfied that there is a reasonable basis for the plea.

On April 3, 1978, he moved to withdraw this guilty plea. The district court refused to hear the merits of the motion on the rationale that it was untimely. Swensen then appealed to the superior court, which ruled that the motion to withdraw his plea was timely but failed on its merits. Swensen now appeals to this court.

■ Under our holding in *Lewis v. State*, 565 P.2d 846, 850–51 (Alaska 1977), a person moving to withdraw a guilty plea under Criminal Rule 32(d) and moving for post–conviction relief under Criminal Rule 35(b) need not show that the former motion has been made with "due diligence," as required by Criminal Rule 32(d)(1)(i). The municipality recognizes that *Lewis* is controlling, but asks us to reverse our decision in that case. We see no compelling reason to do so, and will hence examine the substantive claims raised by Swensen.[2]

Swensen was arraigned *en masse*, along with a number of other misdemeanor defendants. The arraigning judge advised the group of various rights: to remain silent, to counsel, to have counsel appointed if indigent, to plead guilty, to compulsory process, to appeal, to a jury trial, to change of judge, and to bail. When Swensen was arraigned individually, the judge asked him if he understood his rights, read him the charge and asked if he understood it, advised him of the maximum sentence, and inquired if he desired counsel. Swensen then entered his plea of guilty.

■ Swensen in effect attacks the *en masse* arraignment procedure as a denial of due process. He seems to contend that the recitation of rights to the group, followed by the questioning as to each defendant concerning whether he or she understood those rights, is insufficient to establish actual understanding. We cannot agree. The defendants as a group here were clearly apprised of their rights, and were told to ask the judge if there was something that needed further explanation. We see nothing in this procedure requiring us to hold it infirm *per se*.

■ On the other hand, we do agree with Swensen that two facets of his arraignment were in violation of his rights. We find first that he did not make a valid waiver of his right to counsel. Under Criminal Rule 39(b)(3), which was in effect at the time of Swensen's arraignment, the court is required to appoint counsel for an indigent defendant "unless he demonstrates that he understands the benefits of counsel and knowingly waives the same." *See Gregory v. State*, 550 P.2d 374, 378–79 (Alaska 1976). Swensen apparently was not indigent at the time of arraignment, and so Criminal Rule 39(b)(3) did not apply to his case. It was governed instead by Criminal Rule 39(a):

If the defendant appears for arraignment or trial without counsel, the court shall advise him of his right to have counsel, and shall ask him if he desires the aid of counsel.

We hold that Criminal Rule 39(a) must be interpreted consistently with Criminal Rule 39(b)(3) in order to avoid constitutional problems; i. e., the advice given to a nonindigent defendant concerning the right to counsel must also include at least a brief explanation of the "benefits of counsel."[3]

In *Gregory v. State*, 550 P.2d 374, 379 (Alaska 1976) (footnote omitted), we stated:

2. We also note that the due diligence requirement may well be satisfied in this case. Swensen admittedly did not challenge his plea for over two years, and then only when he faced increased penalties for a new OMVI violation. But, as he points out, he did not become aware of the possible violation of his rights until he consulted counsel in connection with the second OMVI, and he thereafter moved speedily for relief.

3. The construction of Rule 39(a) we are adopting may well be required by the Federal Constitution. *See Boyd v. Dutton*, 405 U.S. 1, 92 S.Ct. 759, 30 L.Ed.2d 755 (1972) (per curiam), in which the Court reversed the denial of a habeas corpus petition claiming lack of counsel. The record indicated that the petitioner was advised of his right to counsel and to appointed counsel if he were indigent, and that he said he did not want a lawyer. But the Court remanded for an evidentiary hearing on whether this was an effective waiver, i. e., whether it was knowing and voluntary.

Reason and reflection compel us to recognize that in our complex system of justice, many people brought before the court are unfamiliar with even the most basic legal concepts. Gregory's confusion at the hearing before the superior court with respect to legal terminology, particularly the terms lawyer, attorney, and public defender, is indicative of this fact. We also recognize that the trial court is obligated to be certain that each citizen, when involved in a criminal matter, is aware of the various rights guaranteed him by the Alaska and United States Constitutions. To insure that all defendants enjoy the right to counsel, it must be clear from the record that the person has been informed of the role of a defense attorney and the advantages of being represented by one in a criminal proceed-

ing. Only after this information is placed before the accused can it be said that he has the capacity, in a legal sense, to make a knowledgeable waiver of his right to counsel under Rule 39(b)(3).

A defendant's waiver of the right cannot be deemed valid absent this explanation.[4] Since the record indicates that Swensen was told only of his right to counsel, with no further explanation of that right, we must conclude that his subsequent waiver was not knowing and effective.

This case is distinguishable from *Williams v. State*, 616 P.2d 881 (Alaska, 1980), in which the majority concluded that a knowing waiver had occurred. In *Williams*, the defendant was asked if he understood what an attorney could do, and he responded, "Yes." Even such minimal inquiry[5] did not occur in this case.

---

**4.** We have previously reached this conclusion with regard to defendants going to trial without counsel. *See O'Dell v. Municipality of Anchorage*, 576 P.2d 104, 107–08 (Alaska 1978); *cf. McCracken v. State*, 518 P.2d 85, 91–92 (Alaska), *appeal after remand*, 521 P.2d 499 (Alaska 1974).

For example, in *O'Dell*, we stated:

It is clear from the record that the arraignment court did advise O'Dell that he had the right to the assistance of counsel and that the court would appoint the public defender to represent him if he could not afford to hire counsel. What the record totally fails to demonstrate is that O'Dell appreciated what he was giving up by declining the assistance of counsel. In short, the record fails to demonstrate a knowing and intelligent waiver by O'Dell of the right to the assistance of counsel. When questioned by the arraignment judge as to whether or not he planned to obtain the services of an attorney, O'Dell's total response was to the effect that it 'was just a matter of clipped bumpers was all it is–there was no accident.'

O'Dell's equivocal response to the district court's inquiry as to whether he planned to retain an attorney is not equatable with a knowing and intelligent waiver of counsel under the standards adopted in *McCracken v. State*, 518 P.2d 85 (Alaska 1974). Although this offense was a minor infraction, the right to counsel still attaches and the record must reflect a clear waiver of that right. The record is simply devoid of an inquiry into O'Dell's comprehension of the benefits of counsel. Once it appears that an accused intends to waive the right to the assistance of counsel, the trial court must take additional steps required by McCracken ["advantages

of legal representation should be explained . . . in some detail," *McCracken*, 518 P.2d at 92] to determine that the accused fully understands the right he is relinquishing. The degree of inquiry necessary should be tailored to the particular characteristics of the accused, such as his lack of education or language disability, and to the complexities of the legal issues raised by the charge against him. In many cases, this duty will be minimal. For instance, traffic misdemeanor cases are usually readily understood by lay persons and the consequences of a finding of guilt are typically not severe. The responsibility of the arraignment judge here would have been satisfied by an additional sentence or two clarifying O'Dell's answer and assuring an intelligent waiver.

576 P.2d at 108 (footnotes omitted).

**5.** We note that the 1980 Alaska Magistrate's checklist for misdemeanor arraignment has an extensive suggested procedure to be followed if an accused wants to waive his right to an attorney. It involves the court giving a short soliloquy on the benefits of having an attorney if the court has any doubts that the accused knows the benefits to be provided by an attorney.

"I am going to explain to you what a lawyer is and what a lawyer does.

A lawyer is a person who has studied the laws of Alaska and has passed a test to show that he understands these laws.

If you have a lawyer to represent you, he will talk with you about the facts of this case, in private. Your lawyer is not allowed to tell anyone else about what you tell him about this case unless you want him to do so.

■ We also find that Swensen was not adequately apprised of his right to a jury trial and therefore a prerequisite to a knowing waiver was lacking.[6] During the group arraignment, the defendants were told that they had a right to trial by jury "if you could be sentenced to jail or suffer the loss of valuable license or suffer a heavy enough fine to incr– to indicate criminality." At his individual arraignment, Swensen was told he could receive a jail term for his offense. He thus had to determine for himself whether he had the right to a jury trial, presuming he drew the connection between his possible sentence and the previous advice on jury trials. We hold that in a group arraignment each defendant with a right to a jury trial must be individually apprised of that right.[7] The arraigning judge may not leave the defendants to figure out what rights they have.[8]

> Your lawyer will come to court with you each time you come to court, and he will speak for you in court. He will talk to the lawyer for the state for you.
>
> Your lawyer will examine the charges which have been brought against you to see if they are in proper form. Because your lawyer has been trained in the law, he might see some mistakes in the legal papers which have been filed against you which you might not see. Your lawyer will prepare and file legal papers for you.
>
> Your lawyer will make sure that no improper evidence would be brought against you in court.
>
> You lawyer will make sure that all your rights are protected in this court.
>
> Your lawyer can advise you about whether or not you should have a trial.
>
> Your lawyer will show your case to this court in the way most favorable to you. He will question any witnesses who speak out against you. He will present evidence in court for you.
>
> Even if you think you want to admit that the charges against you are true, a lawyer can held you by giving favorable information to this court and making an argument for you at sentencing.
>
> Because your right to a lawyer is so important, *if you want a lawyer but cannot pay for one, I will appoint a lawyer for you*; that is, you can have a lawyer that you won't have to pay for." [emphasis in original]
>
> We think this procedure is reflective of a careful approach to the handling of the waiver of constitutional rights.

6. Alaska R.Crim.P. 11(c) provides in part: "The court shall not accept a plea of guilty or nolo

■ In *Lewis v. State*, 565 P.2d 846, 851 (Alaska 1977), we stated that failure to comply with Rule 11 plea procedures will be dealt with on a case–by–case basis, and we refused to adopt a rule of *per se* reversibility. Error must be sufficient to show that "withdrawal [of the plea] is necessary to correct manifest injustice," Alaska R.Crim.P. 32(d)(1), and must affect substantial rights and be evaluated like other non–constitutional errors. 565 P.2d at 852. Thus, under *Love v. State*, 457 P.2d 622, 631 (Alaska 1969), we must be convinced that the error had a substantial influence on the result. The two errors in this case just discussed when considered together are not harmless under the *Love* standard.[9]

Because of these errors at Swensen's arraignment, we must reverse the decision of the courts below in refusing to allow Swensen to vacate his guilty plea. In order to

> contendere from a defendant without first addressing the defendant personally and   .   .   .   (2) informing him that by his plea of guilty or nolo contendere he waives his right to trial by jury   .   .   .."

7. If all the defendants in a group face penalties entitling them to jury trials, the arraigning judge may then properly tell the group as a whole of their jury trial rights. The advice, however, must be unconditional, which was not the case here.

8. *Compare Williams v. State*, 616 P.2d 881, (Alaska, 1980), in which a knowing waiver of the right to a jury trial was found. In that case, the defendant was twice individually asked if he wanted a jury trial and declined to accept one.

9. If the construction which we place on Criminal Rule 39 is constitutionally required, a possibility noted in n.3 *supra*, then the *Love* standard may be inappropriate, and the applicable standard may be that the error must be "harmless beyond a reasonable doubt." *See Love v. State*, 457 P.2d 622, 631–33 (Alaska 1969); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, *reh. denied*, 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967). However, we need not reach either issue in this case, since our interpretation of Criminal Rule 39 is a matter of construction rather than constitutional law, and since we are persuaded that the error here was not harmless even under the less strict *Love* standard.

assist the trial court if the state determines to proceed further upon remand, we will discuss the other points raised by Swensen.

■ He alleges a violation of Criminal Rule 11(c)(1), barring acceptance of a guilty plea unless it is shown that the defendant understands the "nature of the charge." We discussed this rule in *Larson v. State*, 614 P.2d 776, (Alaska, 1980), in which we concluded that Larson was not informed of the "nature" of assault with a dangerous weapon when he was not told that he had a possible defense of intoxication to the specific intent crime. In the case at bar, the offense, however, is not complex, and we believe that the court adequately explained its "nature" by reading the charge to Swensen and giving him an opportunity to ask any questions he might have.[10] *See United States v. Dayton*, 604 F.2d 931, 938 (5th Cir.1979) (en banc).

■ Swensen next argues that there was a failure to comply with Criminal Rule 11(c)(3) (requiring notice to the defendant of the permissible punishment before the plea is accepted), because the court told him that action "may" be taken on his driver's license, when a temporary revocation was in fact mandated by statute, with a limited discretionary exception for individuals whose ability to earn a livelihood would be severely impaired by license revocation.[11] We find this error too insignificant to constitute, in and of itself, a substantial violation of the rule warranting relief. Considered alone, this error is harmless; but a more decisive case of reversible error overall is made out when this error is considered in conjunction with the other errors which we have discussed.

■ Swensen's final assertion of error is that there was a violation of Criminal Rule 11(f),[12] arising from the district court's failure to establish a factual basis for the plea. We hold that in the instant case, involving a simple offense and a quite specific charge, Rule 11(f)[13] was satisfied by the reading of the charge and Swensen's subsequent plea. *United States v. Dayton*, 604 F.2d 931, 938 (5th Cir.1979), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980), spoke of the "factual basis" provision of the identical federal rule:

[N]o mechanical rules can be stated, and the more complex or doubtful the situa-

---

10. Swensen contends that OMVI is "commonly misunderstood," and points to the 11 pages devoted in 1 R. Erwin, Defense of Drunk Driving Cases § 1.04 (3d ed. 1979), to the meaning of "under the influence." The author's discussion, however, deals with the shadings that different jurisdictions have given to "under the influence." The core concept is simple, and is uniform: a person's ability to operate a vehicle must be impaired.

11. At the time of Swensen's plea, the provisions regarding mandatory revocation of a license were contained in AS 28.15.210 (ch. 74, § 1, SLA 1974), which was repealed (ch. 178, § 19, SLA 1978) and replaced by the current statute, AS 28.15.181.

We urge arraigning court judges to act with appropriate caution to insure that vague statements are not made to defendants as to the possible punishments they may face, but rather that such information be fully and accurately conveyed to them.

12. Alaska R.Crim.P. 11(f) provides:

*Determining the Accuracy of Plea.* The court shall not enter a judgment upon a plea of guilty without first being satisfied that there is a reasonable basis for the plea.

13. Fed.R.Crim.P. 11, identical in relevant part to Alaska R.Crim.P. 11(f) and upon which it was based, was added in 1966. The Advisory Committee note explains:

The court should satisfy itself, by inquiry of the defendant or the attorney for the government, or by examining the presentence report, or otherwise, that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty. Such inquiry should, e. g., protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.

*See, e. g., United States v. Untiedt*, 479 F.2d 1265 (8th Cir.1973) (per curiam), ordering vacation of guilty plea to stealing, receiving, possessing and concealing goods of value more than $100 which were part of an interstate shipment, when there was no showing that the goods stolen were part of interstate shipment and no discussion of the acts which defendant actually performed. *See also* 1 C. Wright, Federal Practice and Procedure ¶174 (1969 and Supp.1979).

tion . . . , the more searching will be the inquiry dictated by a sound judgment and discretion. . . . [Amended Rule 11] retains its clear reference to the trial judge's subjective satisfaction, and we conclude that this remains the test for that judge.[14]

*See also State v. Sutherland*, 483 P.2d 576, 578 (Ariz.App.1971).

The complaint here contained a sworn statement by the arresting officer that he saw Swensen weaving on the road, that Swensen's breath smelled strongly of alcohol, that his balance was poor, his eyes were bloodshot, and his speech was slurred. We believe that this sworn statement established an adequate factual basis for Swensen's plea.

REVERSED.

BOOCHEVER, J., not participating.

BURKE, Justice, with whom MATTHEWS, Justice, joins, dissenting.

I respectfully dissent. The instant case, in my opinion, is indistinguishable from *Williams v. State*, 616 P.2d 881 (Alaska, 1980). Accordingly, I would affirm Swensen's conviction.

Mr. Justice Matthews has authorized me to state that he joins in my dissent.

14. The Fifth Circuit went on to state:
   We must review the exercise of that discretion, however, if an appeal is taken from it, and we must do so on the record of the Rule 11 proceeding. It is therefore incumbent upon the judge to produce a record on the basis of which we can determine that his discretion was not abused.
   *United States v. Dayton*, 604 F.2d at 938.