791 N.E.2d 802 (2003)
In the Matter of N.M., a child alleged to be delinquent, Appellant-Respondent,
v.
STATE of Indiana, Appellee-Petitioner.
No. 49A02-0303-JV-231.
Court of Appeals of Indiana.
July 16, 2003.
*803 Susan K. Carpenter, Public Defender of Indiana, Amy E. Karozos, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.
Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

OPINION
MAY, Judge.
N.M. appeals her adjudication as a delinquent for committing an act that would be robbery, a Class B felony, if committed by an adult.[1] She raises one issue for our review, which we restate as whether her waiver of her right to counsel was knowing, intelligent, and voluntary. We reverse and remand.

FACTS AND PROCEDURAL HISTORY
On December 9, 2001, fifteen-year-old N.M. and two other teenage girls went to the laundry room at Pinnacle Square Apartments. There, the three girls confronted another teenager, A.O. N.M. showed A.O. a gun, and the three girls demanded that A.O. give them her shoes. A.O. gave them her shoes.
*804 The Lawrence police began investigating the robbery of A.O. and learned that N.M. was involved. On December 19, 2001, N.M.'s probation officer filed a notice of violation of home detention. Christine Magness, N.M.'s mother, took N.M. to the Lawrence Police Department, where Detective Woodruff advised N.M. and Magness of N.M.'s Miranda rights. After consulting with Magness in a room alone, N.M. admitted her participation in the robbery of A.O., and she was arrested and taken to the Marion County Juvenile Detention Facility. The State filed a delinquency petition alleging N.M. committed an act that would be robbery if committed by an adult.
At some point on the 19th, N.M. and Magness signed a "Court Advisement of Rights." (Appellant's App. at 15.) That document provided, in pertinent part: "The child has a right to be represented by a lawyer at all stages of the court proceedings. Having such a right, the case may be continued at any point in order to consult a lawyer for him/her." (Id.) Above N.M.'s and Magness's signatures are the words, "I Have Read And I Understand The Rights Listed Above." (Id.)
The next day, N.M. and Magness appeared in court for the initial hearing. The judge read the delinquency petition to N.M. and Magness as they read along on a separate copy. The trial court advised N.M. of her right to an attorney as follows:
Court: [N.M.], you have a number of rights that are guaranteed to you in this matter. The first of these rights that you have, you have the right to have an attorney. Do you wish to have an attorney in this case?
[N.M.]: No.
The Court: No what?
[N.M.]: No sir, I don't, I don't need an attorney.
The Court: Oh you don't, alright. Mom, you think your daughter needs a lawyer here?
[Magness]: No sir she ... she knows.
The Court: Alright, we'll show knowing lawful waiver of counsel in this matter.
(Tr. # 1 at 2.)[2] Then, after the judge told N.M. the other rights she had and the possible dispositional alternatives, N.M. admitted she used a gun to force A.O. to give up her shoes. The trial court found the petition to be true. At a dispositional hearing held later, the court ordered N.M. committed to the Girls' School for twenty-four months.
On October 17, 2002, N.M. moved for relief from judgment, claiming she did not knowingly or voluntarily waive her right to an attorney at the initial hearing. The trial court held a hearing, where N.M. presented evidence in support of her motion. (See Tr. # 2.) Thereafter, the trial court denied N.M.'s motion.

DISCUSSION AND DECISION
N.M. claims the trial court erred in denying her motion for relief from judgment. A trial court has discretion to grant or deny a motion for relief from judgment. S.E. v. State, 744 N.E.2d 536, 538 (Ind.Ct. App.2001). We reverse a trial court's decision only for an abuse of that discretion. Id. A trial court abused its discretion if its *805 decision was clearly against the logic and effect of the facts and circumstances, or reasonable inferences therefrom, that were before the court. Id.
N.M.'s request for relief from the judgment was based upon her waiver of counsel at the initial hearing. N.M. claims that she did not knowingly and voluntarily waive her right to counsel under Ind.Code § 31-32-5-1 because neither she nor her mother was informed that counsel would be appointed to represent her if they were unable to afford counsel.
N.M. had a right to counsel under the Sixth Amendment to the United States Constitution. J.W. v. State, 763 N.E.2d 464, 467 n. 1 (Ind.Ct.App.2002) (a juvenile facing a delinquency proceeding is entitled to "the guiding hand of counsel at every step in the proceedings against him.") (quoting In re Gault, 387 U.S. 1, 36, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)). She also had a statutory right to counsel in the juvenile proceedings against her. Ind. Code § 31-32-2-2 ("[A] child charged with a delinquent act is also entitled to ... be represented by counsel under IC 31-32-4...."). See also Ind.Code 31-32-4-1.
For a juvenile's waiver of her right to counsel to be valid, it must be freely and voluntarily given. D.H. v. State, 688 N.E.2d 221, 224 (Ind.Ct.App. 1997). Before a juvenile can waive the right to counsel, the record should show that the juvenile was "advised of the nature, extent, and importance of the right to counsel and the consequences of waiving that right." J.W., 763 N.E.2d at 467. "Specifically, the juvenile court should warn a defendant who proceeds pro se in a criminal case of the dangers and pitfalls of self-representation." Id. In addition, the court must inform the juvenile that, if she or her parents cannot afford an attorney, one will be appointed for her at public expense. In re Jennings, 176 Ind.App. 277, 279, 375 N.E.2d 258, 260 (1978).
Both parties claim the outcome here is controlled by M.R. v. State, 605 N.E.2d 204 (Ind.Ct.App.1992), wherein the trial court did not inform M.R. at the initial hearing that he had a right to appointed counsel. Nevertheless, we affirmed his adjudication as a juvenile delinquent because his claim that he had not been informed of his right to appointed counsel was not supported by the facts in the record. Id. at 206. The State argues the facts here are indistinguishable from the facts in M.R., while N.M. claims the facts are distinguishable.
In M.R., we concluded M.R. had been informed on two occasions before his initial hearing that he had a right to appointed counsel:
First, M.R. and his mother, prior to M.R.'s court appearance, signed a written advisement of rights which read, in part:
3. The child has a right to be represented by a lawyer at all stages of the court proceedings ... If the parents are unable to hire one, the Court will appoint a lawyer for him/her.
Further, although the trial court did not personally inform M.R. and his mother in court of his right to counsel at State expense, they previously were so informed by a videotape recording made by the same juvenile judge before whom M.R., accompanied by his mother, appeared.
The tape informed all persons about to appear in juvenile court of their various constitutional rights and the dispositional alternatives the juvenile court could impose, in minute detail. The videotape at its conclusion also told M.R. and its other viewers if they wanted further explanation of their rights or did *806 not understand them, they should so inform the judge or juvenile referee.
Id. (citations and footnote omitted).
Here, the advisement signed by N.M. and Magness indicated: "The child has a right to be represented by a lawyer at all stages of the court proceedings. Having such a right, the case may be continued at any point in order to consult a lawyer for him/her." (Appellant's App. at 15.) Unlike the written advisement in M.R., this advisement did not inform N.M. and Magness that an attorney would be appointed for N.M. at public expense if they could not afford one.
In addition, it is unclear whether N.M. and Magness had access to the same video that was played for M.R. and his mother. Magness testified at the hearing on the motion for relief from judgment that she "saw the tape [of Judge Payne] being played on the monitors. I can't say that I heard it." (Tr. # 2 at 5.) N.M. testified, "When I first came in, before I even came, when I was still in greens, when I very, very first came in, they had it, it was already playing when I came in there and I ... they didn't tell me I had to watch it." (Id. at 22.) The State presented neither witnesses nor a copy of the videotape.
We recognize that "[a]n en masse advisement of rights when coupled with a trial judge's personal interrogation of the defendant passes constitutional muster." M.R., 605 N.E.2d at 206.[3] However, the law surely contemplates the defendant be told she needs to listen because she is *807 about to be advised of her rights. Given the ubiquitous nature of television in public waiting areas and the plethora of court-based reality and drama television shows, a typical viewer might not assume that she needs to listen to a judge speaking on a television.
Moreover, the State should have produced a witness or witnesses who could testify that N.M. and Magness viewed the entire tape, that Magness and N.M. were informed that they needed to pay attention to the televised videotape because it was explaining N.M.'s rights, and that the videotape informed them that N.M. had a right to appointed counsel at public expense if Magness could not afford one for her. Without such testimony, we decline to hold that a videotape playing on a television in a room where Magness or N.M. happened to be was, without more, sufficient to inform N.M. and Magness of N.M.'s constitutional right to appointed counsel at public expense. We disagree with the State's claim that this case is controlled by M.R., and find more compelling N.M.'s claim that M.R. is distinguishable. Because N.M. was not adequately advised of her right to appointed counsel at public expense, we must reverse.[4]See Jennings, 375 N.E.2d at 261 (reversing court's revocation of juvenile's probation because he had not been informed of his right to appointed counsel).
Reversed and remanded.
KIRSCH, J., and MATHIAS, J., concur.
NOTES
[1] Ind.Code § 35-42-5-1.
[2] The transcript of the initial hearing and the transcript of the hearing on the motion for relief from judgment were bound and numbered separately, despite our rule instructing "[t]he Transcript shall be numbered consecutively regardless of the number of volumes the Transcript requires." Ind. Appellate Rule 28(A)(2). Herein, the transcript of the initial hearing will be referred to as "Tr. # 1," and the transcript of the hearing on the motion for relief from judgment will be referred to as "Tr. # 2."
[3] While not specifically so holding, M.R. suggests that an en masse video advisement of rights, when combined with questioning by the judge, is sufficient to inform juveniles of their constitutional and statutory rights. See M.R., 605 N.E.2d at 206. To support his statement, Judge Conover cites two cases involving en masse advisements of adult defendants. See id. (citing Snowe v. State, 533 N.E.2d 613, 616 (Ind.Ct.App.1989) (acknowledging that while "a televised advisement may serve a preliminary purpose, a sitting judge cannot rely solely on such an advisement. Rather, on the record he must determine for himself each defendant knows and understands his rights"), disapproved of by Rhoades v. State, 675 N.E.2d 698, 701 n. 5 (Ind.1996) (disapproving of Snowe "[t]o the extent that the court in Snowe applied the [wrong] standard of review"), and French v. State, 472 N.E.2d 210, 212 (Ind.Ct.App.1984) (noting en masse advisement of adults was appropriate)).

Our research did not uncover other Indiana or United States Supreme Court cases discussing the appropriateness of en masse advisements, whether live or televised, for juveniles. But see Wehner v. State, 684 N.E.2d 539, 539 (Ind.Ct.App.1997) (noting appellant given en masse advisement by judge); Beldon v. State, 657 N.E.2d 1241, 1243 (Ind.Ct.App. 1995) (same), reh'g denied, trans. denied. Nevertheless, given the special status of juveniles and the extra protection afforded them, we question whether such an advisement is adequate or appropriate. See, e.g., Beldon, 657 N.E.2d at 1243 (wherein appellant questioned whether en masse advisement was sufficient to inform a juvenile of his rights, but court reversed on other grounds without addressing issue). We, like our predecessors in Snowe, appreciate the "the desire to economize judicial time." 533 N.E.2d at 617. But in light of the fact that the trial court is required to question each child about whether he or she understands the rights, perhaps a better approach would be for the trial court judge personally to advise individually each child and his or her parent or parents at the same time he questions whether they understand the rights. See generally George L. Blum, Annotation, Validity and Efficacy of Minor's Waiver of Right to CounselCases Decided Since Application of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), 101 ALR5th 351 (2002) (discussing cases holding juvenile's waiver of counsel ineffective when trial judge failed to adequately inform juvenile of right to appointed counsel or when proceedings hurried or cursory and citing, for example, Gonsalves v. Devine, 110 R.I. 515, 294 A.2d 206 (1972), which held that advisement of right to appointed counsel by probation counselor prior to juvenile hearing did not relieve trial judge of his obligation to so inform child and mother).
[4] Because we reverse the court's judgment based upon the failure to give N.M. and Magness an adequate advisement regarding N.M.'s right to appointed counsel, we need not address the other reasons she claims her waiver of her right to counsel was not knowing or voluntary.