849 A.2d 487

**Kurt H. RICHARDSON**

v.

**STATE of Maryland.**

**No. 41, Sept. Term, 2003.**

Court of Appeals of Maryland.

May 14, 2004.

---

Sherrie B. Glasser, Asst. Public Defender (Stephen E. Harris, Public Defender and Stacy W. McCormack and Margaret

L. Lanier, Asst. Public Defenders, on brief), Baltimore, for Petitioner.

Shannon E. Avery, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of MD, on brief), Baltimore, for Respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and JOHN C. ELDRIDGE (Retired, specially assigned), JJ.

BELL, Chief Judge.

In this case, we are asked to decide whether showing the defendant, either singly or as a member of a group of defendants, a videotape of a judge giving the advice that Maryland Rule 4–215(a)[1] requires and subsequently taking him or her before a judge for bail review comply with that rule and to determine the effect, if any, that procedure has on a subsequent determination that the defendant has waived counsel by inaction, pursuant to Rule 4–215(c) or (d).[2] The Court of

---

1.  Maryland Rule 4–215(a) provides:
    "(a) *First Appearance in Court Without Counsel.* At the defendant's first appearance in court without counsel, or when the defendant appears in the District Court without counsel, demands a jury trial, and the record does not disclose prior compliance with this section by a judge, the court shall:
    "(1) Make certain that the defendant has received a copy of the charging document containing notice as to the right to counsel.
    "(2) Inform the defendant of the right to counsel and of the importance of assistance of counsel.
    "(3) Advise the defendant of the nature of the charges in the charging document, and the allowable penalties, including mandatory penalties, if any.
    "(4) Conduct a waiver inquiry pursuant to section (b) of this Rule if the defendant indicates a desire to waive counsel.
    "(5) If trial is to be conducted on a subsequent date, advise the defendant that if the defendant appears for trial without counsel, the court could determine that the defendant waived counsel and proceed to trial with the defendant unrepresented by counsel.
    "The clerk shall note compliance with this section in the file or on the docket."

2.  Rule 4–215, as relevant, provides:
    "(c) *Waiver by Inaction—District Court.* In the District Court, if the defendant appears on the date set for trial without counsel and

Special Appeals, rather than answer either of the issues, remanded the case to the Circuit Court, with instructions that it do so. We shall reverse.

## I.

The petitioner, Kurt H. Richardson, was arrested and charged with felony and misdemeanor drug offences and resisting arrest. When he appeared for his bail hearing, rather than being taken directly before the court, he, along with a group of defendants, was shown a videotape. On the

indicates a desire to have counsel, the court shall permit the defendant to explain the appearance without counsel. If the court finds that there is a meritorious reason for the defendant's appearance without counsel, the court shall continue the action to a later time, comply with section (a) of this Rule, if the record does not show prior compliance, and advise the defendant that if counsel does not enter an appearance by that time, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds that there is no meritorious reason for the defendant's appearance without counsel, the court may determine that the defendant has waived counsel by failing or refusing to obtain counsel and may proceed with the trial only if (1) the defendant received a copy of the charging document containing the notice as to the right to counsel and (2) the defendant either (A) is charged with an offense that is not punishable by a fine exceeding five hundred dollars or by imprisonment, or (B) appeared before a judicial officer of the District Court pursuant to Rule 4-213(a) or before the court pursuant to section (a) of this Rule and was given the required advice.

"(d) *Waiver by Inaction—Circuit Court.* If a defendant appears in circuit court without counsel on the date set for hearing or trial, indicates a desire to have counsel, and the record shows compliance with section (a) of this Rule, either in a previous appearance in the circuit court or in an appearance in the District Court in a case in which the defendant demanded a jury trial, the court shall permit the defendant to explain the appearance without counsel. If the court finds that there is a meritorious reason for the defendant's appearance without counsel, the court shall continue the action to a later time and advise the defendant that if counsel does not enter an appearance by that time, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds that there is no meritorious reason for the defendant's appearance without counsel, the court may determine that the defendant has waived counsel by failing or refusing to obtain counsel and may proceed with the hearing or trial."

videotape,[3] a judge provided advice and instructions, generally as follows:

> "THE COURT: Your bail review is not your trial, but is a hearing to determine whether the bail that has been set in your case ought to be increased or decreased or whether you ought to be released on your own recognizance. This is not your opportunity to tell the Court whether you are guilty or not guilty. Each of you should've received a copy of your statement of charges. If you have not received your charging documents please tell the pre-trial representative and the bail review judge, and a copy will be provided to you. You have certain very important rights, please listen carefully. If you are charged with a felony you have a right to preliminary hearing, if you choose to have a preliminary hearing the State must show that there is probable cause that a crime was committed and probable cause that you committed that crime. Your preliminary hearing date is printed on the paper the Court Commissioner gave you. If you are charged with a crime that carries a penalty of more than ninety days incarceration you have a right to a jury trial at the Circuit Court of Baltimore City. A jury is composed of twelve persons picked from the motor and voter rolls of Baltimore City, all twelve jurors must find you guilty beyond a reasonable doubt in order for you to be found guilty. You also have a right to a court trial, where a judge would decide whether you are guilty or not guilty. The standard of proof in a court trial is also beyond a reasonable doubt. Your trial date is printed on the paper the Court Commissioner gave you. Perhaps your most important right is your right to have a lawyer represent you. If you cannot afford to retain a private lawyer to represent you at not [sic] cost. The State's Attorney who

---

**3.** Although there were three different videotapes in use by that trial court during the general time period in question, featuring three different judges, with minor variations, the contents of each were essentially the same. Mr. Robert Weisengoff, the Director of the Pretrial Release Services Program, reported that it simply is not known which of the videos was shown to Richardson 1998.

will be prosecuting the case is a lawyer, the rules of evidence will apply at your trial. If you are not trained in the law and you do not know the rules of evidence you will find that you are at a disadvantage in attempting to represent yourself. A lawyer can help you in many ways, a lawyer can help you investigate your case, and determine if there is a legal defense that you might not know exists. A lawyer can help you question the State's witnesses, call witnesses and question any witnesses that you any have. A lawyer can help you decide whether you should testify or whether you should remain silent. Even if you are found guilty a lawyer can still help you by arguing to the judge about the sentence to be imposed. These are the advantages to having a lawyer. There are only disadvantages in representing yourself. You may retain any lawyer you choose, if you are unable to hire a private attorney you may go to the Public Defender's office to apply for representation. If you remain in jail the Public Defender's Office will represent you if you choose. If you make bail or are released on your own recognizance you must go in person to the Public Defender's Office. When you arrive you will be given an income verification form, the verification form must be returned to the Public Defender's office more than ten working days before your trial date so that a determination can be made whether you qualify for representation. If you do nothing between now and the date of your trial the judge may find that you have waived your right to a lawyer. If that happens you will have to proceed without representation. If you have any questions regarding these rights, please ask the bail review judge when you [sic] name is called."

Bail Review Instructions, Official Transcript of Proceedings before Honorable Alan T. Karlin, Judge, October 28, 2003.

After viewing the video, the petitioner and the other members of the group were taken into the courtroom, before the bail review judge. Having inquired, "[t]his group has seen the video and been advised of their rights, is that correct[ ]" and

received the response,[4] "Yes, sir, they have," the judge proceeded to review each defendant's case individually. With respect to the petitioner, with the exception of advising the petitioner that his bail would remain the same and hearing from the representative from Pretrial Release Services, that review, in its entirety, consisted of the following:

"THE COURT: Mr. Richardson, in case Number 2172, one count of distribution is a felony, 20 years, $25,000; one count of possession, 4 years and/or $25,000; resisting arrest (inaudible) could receive a sentence not deemed cruel and unusual.

"Preliminary hearing is September 17th, Courtroom 3, 830 North Avenue. Pretrial.

"WOMAN'S VOICE: Gina (inaudible) for pretrial release services. For the record, Your Honor, this defendant does have a 52 page record, and this was the allegation: The police observed the defendant looking into a pill container. They come back with a field interview.

"He then threw that container into the street. They did recover 14 gel caps of suspected heroine [sic]. Current bail is set at 5,000 and pretrial is not requesting a change."

"THE COURT: The bail remains the same."

(Official Transcript of Proceedings (Arraignment Hearing), August 18, 1998). The record thus reflects that the bail review judge never inquired of the petitioner personally whether he was present when the video was shown, whether he understood its contents, or whether he had any questions regarding the video. Nevertheless, "The Bail Review Docket" recorded that the District Court Judge did make "certain the defendant received a copy of the charging document; informed the defendant of right to, and importance of, counsel; complied w/rule 4–215; referred defendant to public defender; advised felony defendant of right to preliminary hearing;

---

4. The record reflects that the response was from an unidentified woman, who later identified herself as "Gina (inaudible)," of the Pretrial Release Services.

advised defendant of right to jury trial; ordered bail to remain the same."

When the petitioner next appeared in the District Court, for his preliminary hearing, the felony drug charge against him was nolle prossed and his case was postponed. On that occasion, the only exchange between the petitioner and the court was, as follows:

"THE COURT: Okay, So the State's—(inaudible)—nolle prossed the felony, which means you have an absolute right to a postponement. December 18th is your new date. You have a right to hire private counsel. If you cannot afford private counsel, go to the Public Defender's Office 10 working days before your next trial date. Where do you live sir?

"DEFENDANT: 6924—(inaudible)—

"THE COURT: Have a seat, and we'll call you for a summons. Next person."

(Court Proceedings, September 17, 1998).

The petitioner sought a postponement to get counsel on his next appearance in the District Court. When that request was denied, he prayed a jury trial. In its entirety, the record of that appearance reads:

"VOICE: Okay. The next person in line, step up to the table. Give us your name.

"DEFENDANT: Kurt Richardson.

"VOICE: The State v. Kurt Richardson, Case No. 3b302172. Your honor, the State is ready.

"COURT: Just a moment. So you're ready?

"VOICE: Yes, Your Honor. Is the current one—(inaudible)—I believe the case has been in before.

"THE COURT: Why are you requesting a postponement?

"DEFENDANT: Well, I just got released and I just come from the Public Defender and they told me I got to get—(inaudible)—time to reapply.

"THE COURT: You were arrested on something else?

"THE DEFENDANT: Yeah.

"THE COURT: When did you get released, sir?

"DEFENDANT: A week-and-a-half ago

"THE COURT: When did you get arrested on that?

"DEFENDANT: That was in—last month.

"THE COURT: Okay, Sir, I'm not going to grant you another postponement. This case was postponed three months ago in September. You've had three months to get an attorney. Have a seat. The next person, step up. Give us your name.

"(Whereupon, the tape was temporarily stopped and resumed at this part of the proceeding.)

"VOICE: Just a moment please.

"VOICE: The State v. Kurt Richardson, Case No. 3B302172.

"VOICE: Mr. Richardson, are you—(inaudible)—sir?

"DEFENDANT: Yeah.

"VOICE: Stand over here. I'll give you a summons.

"VOICE: You're asking for a jury trial, Richardson?

"VOICE: Kurt Richardson.

"(Whereupon, the above-entitled proceeding was concluded.)"

(Court Proceedings, December 18, 1998).

The next appearance the petitioner made in court was in the Circuit Court for Baltimore City. He appeared without counsel and the court determined that the petitioner had waived counsel by inaction, pursuant to Rule 4–215(d). The basis for that determination is reflected in following colloquy:

"THE COURT: Who is your lawyer?

"THE DEFENDANT: I was sent down on a summons.

"THE COURT: Sir, you weren't sent down here. You asked for a jury trial.

"THE DEFENDANT: Right.

"THE COURT: Who is your lawyer, Mr. Richardson?

"THE DEFENDANT: My lawyer is not present.

"THE COURT: Who is your lawyer is my question?

"THE DEFENDANT: I ain't make it over there to 201 Saint Paul Place.

"THE COURT: The answer is you do not have your lawyer.

"THE DEFENDANT: No.

"THE COURT: Okay. So when I asked who your lawyer is, the answer is I don't have one, is that correct?

"THE DEFENDANT: That's correct.

"THE COURT: Okay. Now, when were you charged with this crime?

"THE DEFENDANT: When was I charged with it?

"THE COURT: When were you charged with this crime?

"THE DEFENDANT: I can't remember the date. It was this year?

"[THE STATE:]: August 17, 1998, Your honor.

"THE COURT: It continues to amaze me that people do not remember when they are arrested. Hardly anyone remembers the date they are arrested. I always though [sic] that was seminal [sic] day in the life of an individual. That is the day when someone took away your freedom. I guess not. When were you released?

"THE DEFENDANT: Released? I believe in October.

"THE COURT: How long did you stay incarcerated?

"THE DEFENDANT: About thirty days.

"THE COURT: What have you done since your release to obtain a lawyer?

"THE DEFENDANT: I had a lawyer, but when I got released I didn't have sufficient time to go reapply.

"THE COURT: Now, sir, that is not true. If you were released in October—

"THE DEFENDANT: Right

"THE COURT:—today is December—

"THE DEFENDANT: Right.

"THE COURT:—what prevented you from going to the Public Defender's Officer later in October, the whole month of November[,] or just about the whole month of December?

"THE DEFENDANT: I had a public defender, but I had got locked up again and got released in November.

"THE COURT: Okay. Let's take this chronologically. You were arrested for the charge of narcotic possession—

"THE DEFENDANT: Right.

"THE COURT:—in August. That's this case?

"THE DEFENDANT: Right.

"THE COURT: How long did you remain incarcerated on the case?

"THE DEFENDANT: Thirty days, I believe.

"THE COURT: Okay. So sometime in late September or early October you were released from custody on this case?

"THE DEFENDANT: Right

"THE COURT: ... When were you arrested on the next case?

"THE DEFENDANT: October and released in November.

"THE COURT: So how long was the interval or the gap between release on this charge and the arrest on the next charge.

"THE DEFENDANT: That was like ten or fifteen days.

"THE COURT: In that period of ten or fifteen days.

"THE DEFENDANT: I went up to the Public Defender's Office and they told me I had to reapply within ten working days and they gave me a piece of paper that said within ten working days and bring proof of income.

"THE COURT: Do you remember your first trial date in the district court?

"THE DEFENDANT: August.

"THE COURT: No, it was September 17. You were arrested in August. Your first trial date was September 17.

"THE DEFENDANT: Yes, I remember.

"THE COURT: That was when you were there for a preliminary hearing.

"THE DEFENDANT: Right.

"THE COURT: And the case was then later dropped from a felony to misdemeanor.

"THE DEFENDANT: Yes.

"THE COURT: And they postponed the case from September 17 to December 18, three months.

"THE DEFENDANT: Right.

"THE COURT: After you were released in November on a second charge, what did you do to get a lawyer for this case?

"THE DEFENDANT: I went up there and—

"THE COURT: When did you go up there?

"THE DEFENDANT: I went up there, I believe, around December, about the first or second week of December.

"THE COURT: Is there a reason you did not go there the day after you were released in November?

"THE DEFENDANT: Yes.

"THE COURT: What was that reason?

"THE DEFENDANT: Because at that time I was out looking for a job and I was going—when I went up there, it was late, and they told me to come back. And when I did go back, they told me to bring proof of income and this and that and they told me that it was too late, that I had to reapply within ten days, and they gave me a piece of paper to show up North Avenue.

"THE COURT: Here is our problem sir.

"THE DEFENDANT: Yes.

"THE COURT: Your case has been pending since August, and here you are four months later and do not have a lawyer to represent you.

"THE DEFENDANT: I had two lawyers.

"THE COURT: That's right, you had two lawyers probably from the Public Defender's Office.

"THE DEFENDANT: Right

"THE COURT: And they represent you while you're incarcerated. Once you while you're released, they ask you simply to go back up and reapply.

"THE DEFENDANT: Right.

"THE COURT: But you had since August to do that, sir.

"THE DEFENDANT: I have.

"THE COURT: You have not done it in a timely manner.

. . .

"THE COURT: By my calculation, sir, you had eight days in the last part of November and the first part of December when you had an opportunity to apply to the Public Defender's Office in a timely manner to get a lawyer and you didn't do it.

"THE DEFENDANT: That's because they told me it was too late.

"THE COURT: Yes, it was, when you applied in late December. You had from the 23rd of November to the 4th of December. Maybe you were busy trying to find a job or something else, but finding a lawyer to represent you in a criminal charge where you could get incarcerated seems to be a priority. I'm not going to delay this case any further.

"DEFENDANT: Okay.

"THE COURT: This Court finds that you were aware of your right to the representation of an attorney, you were aware that an attorney could be helpful in representing you in these matters, and you have not set forth any meritorious reason why you do not have a lawyer to represent you."

(Reporter's Official Transcript of Proceedings, December 22, 1998).

Following a jury trial, the petitioner was found guilty of possession of heroin. He was sentenced the same day to three years incarceration.

The petitioner timely noted an appeal to the Court of Special Appeals. Initially, that court, in an unreported opinion, dismissed the petitioner's appeal for "failure to provide a complete transcript of the proceedings in [C]ircuit [C]ourt as required by Maryland Rule 8–411." Subsequently, after receiving affidavits the petitioner submitted with respect to the efforts his counsel had made to complete the record, without

granting or denying the petitioner's motion for reconsideration of that decision, but recognizing that justice would thereby be served, the intermediate appellate court issued an order remanding the case to the Circuit Court for an evidentiary hearing to determine whether the petitioner is entitled to a new trial because of noncompliance with Rule 4–215. More particularly, the Order instructed:

"If there exists an accurate record of the relevant proceedings in the District Court of Maryland for Baltimore City, the [C]ircuit [C]ourt shall determine whether appellant is entitled to a new trial on the ground that a review of the relevant [C]ircuit [C]ourt and District Court records show that appellant's waiver of counsel did not comply with the requirements of Md. Rule 4–215. If the District Court employee responsible for producing accurate records of that court's proceedings is unable to provide the [C]ircuit [C]ourt with an accurate record of the relevant proceedings, the [C]ircuit [C]ourt shall determine whether appellant is entitled to a new trial on the ground that—through fault of appellant and/or appellant's counsel—the failure to produce an accurate record has denied appellant the benefit of meaningful appellate review."

Thereafter, the petitioner filed with this Court a petition for writ of certiorari, which we granted. *Richardson v. State*, 376 Md. 139, 829 A.2d 530 (2003).

We shall hold, as the petitioner argues, that merely showing a defendant a videotape of a judge providing the advice and instruction required by Rule 4–215(a) is an insufficient predicate for a finding of waiver of counsel by inaction. At the least, there must be some inquiry to determine the defendant's understanding of the advice and instructions so given. Before addressing that issue, however, we shall consider the propriety, which we shall reject, of the limited remand, pursuant to Maryland Rule 8–604(d),[5] ordered by the Court of Special Appeals.

─────────

5. Maryland Rule 8–604(d) provides, as relevant:

## II.

■ To be sure, Maryland Rule 8–604(d) makes clear that, in a proper case, a limited remand is an acceptable and appropriate disposition. Our cases clarifying and delineating those circumstances when it is acceptable and appropriate were recently synthesized in *Southern v. State*, 371 Md. 93, 104–105, 807 A.2d 13, 16–17 (2002):

"The limited remand is proper in various circumstances, particularly when the purposes of justice will be advanced by permitting further proceedings. *Butler v. State*, 55 Md.App. 409, [433,] 462 A.2d 1230[,1242] (1983). *See McMillian v. State*, 325 Md. 272, [296–297] 600 A.2d 430[,442] (1992) (remand was proper where a question was not previously addressed to the trial court because of an error of law); *Bailey v. State*, 303 Md. 650, [659,] 496 A.2d 665[,669] (1985) (a limited remand was needed to determine whether a discovery violation prejudiced the defendant); *Warrick v. State*, 302 Md. 162, [174,] 486 A.2d 189[, 195] (1985) (remand when necessary to answer whether the State properly complied with disclosure provisions for discovery); *Mahammitt v. State*, 299 Md. 82, [86,] 472 A.2d 477[,479] (1984) (a remand to determine facts regarding a grant of postponement relating to a statutory speedy trial claim served the interests of justice); *Wiener v. State*, 290 Md. 425, [437–438] 430 A.2d 588[,595–596] (1981) (where the issue on restricted (limited) remand is collateral to and not an integral part of a criminal trial and advances the purposes of justice, remand is proper—in reference to the right to counsel)."

---

"(d) *Remand.* (1) Generally. If the Court concludes that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment, or that justice will be served by permitting further proceedings, the Court may remand the case to a lower court. In the order remanding a case, the appellate court shall state the purpose for the remand. The order of remand and the opinion upon which the order is based are conclusive as to the points decided. Upon remand, the lower court shall conduct any further proceedings necessary to determine the action in accordance with the opinion and order of the appellate court."

On the other hand, we have stated emphatically that "Rule 8–604(d) is neither an 'antidote' for the errors of the State or of counsel nor a method to correct errors committed during the trial itself," *id.* at 104, 807 A.2d at 16; its intent and "Maryland case law reviewing this rule do not provide a party with the opportunity to get a second 'bite at the apple' in the same case, but instead, the rule attempts to permit a court to cure some judicial error that resulted in unfairness to a party." *Id.* at 112, 807 A.2d at 31. We have also addressed the situation in which a limited remand has been ordered in the context of a waiver by inaction case. *Mitchell v. State,* 337 Md. 509, 654 A.2d 1309 (1995).

In *Mitchell,* the defendant challenged on appeal the adequacy of the inquiry conducted by the trial court into whether the defendant's reasons for appearing without counsel were meritorious and, thus, its determination that the defendant had waived counsel by inaction. 337 Md. at 513, 654 A.2d at 1311. Rather than reversing the judgment of the trial court and remanding for a new trial, the Court of Special Appeals ordered a limited remand for the trial court to determine the meritoriousness of the defendant's reasons for appearing without counsel. *Id.* Pointing out that "[w]ithout exception, we have ordered a new trial in cases involving a trial court's failure to comply with Rule 4–215(d), we reversed." *Id.* at 517, 654 A.2d at 1313, citing *Williams v. State,* 321 Md. 266, 582 A.2d 803 (1990); *Maus v. State,* 311 Md. 85, 532 A.2d 1066 (1987); *Snead v. State,* 286 Md. 122, 406 A.2d 98 (1979); *Thompson v. State,* 284 Md. 113, 394 A.2d 1190 (1978).[6]

Concluding that, in that case, the Rule 4–215(d) inquiry "was so intertwined with the trial that a limited remand could cause the defendant to suffer great prejudice" and, so, "ad-

---

**6.** The Court noted, also, citing *Evans v. State,* 84 Md.App. 573, 581 A.2d 435 (1990), that, with the exception of *Moreland v. State,* 68 Md.App. 78, 510 A.2d 261 (1986), which it overruled, *Mitchell v. State,* 337 Md. 509, 515, 654 A.2d 1309, 1312 (1995), the Court of Special Appeals had likewise ordered a new trial in all cases "involving a Rule 4–215(d) violation." *Mitchell,* 337 Md. at 517, 654 A.2d at 1313.

versely affected the defendant's right to a fair trial," *Mitchell*, 337 Md. at 517, 654 A.2d at 1313, the Court explained:

"If the case at bar were remanded for a determination of whether Mitchell's reason for appearing without counsel was meritorious, Mitchell would have to reconstruct his actions of over two years ago. He must also recall the dates and contents of conversations with representatives of the Office of the Public Defender, in addition to how much money had been paid and how much money was owed to the private attorney he had previously attempted to retain. The potential prejudice to Mitchell is obvious, and a limited remand in this case would be fundamentally unfair."

*Id.* It held (337 Md. at 518, 654 A.2d at 1313–14):

"Limited remand cannot be used to correct procedural defects at the trial level when the procedure involved is so intertwined with the defendant's constitutional right to counsel that a limited remand would cause unfair prejudice. Failure to conduct the Rule 2–415(d) inquiry at the proper time, therefore, mandates a new trial. The exact circumstances in the instant case under which the original inquiry should have occurred cannot be recreated, and we cannot require the defendant to meet that burden. The interests of justice simply would not be served by ordering a limited remand in this case."

The State distinguishes *Mitchell* on the basis that, while a procedural defect in the inquiry was evident in that case, here "the principal question is not whether the trial court conducted the proper inquiry of [the petitioner], but whether [the petitioner] is at fault for failing to timely produce an accurate record from which the appellate court can determine whether there was compliance with Rule 4–215." This is important, it explains, because, in determining whether a defendant has waived counsel by inaction, since the amendments to Rule 4–215(d), effective July 1, 1991,[7] "a [C]ircuit

---

7. Before the amendment, Rule 4–215(d) provided:

[C]ourt judge [may] rely on the advice of the right to counsel previously given to a defendant by a District Court judge when the defendant requests a jury trial." *Smith v. State*, 88 Md.App. 32, 43, 591 A.2d 902, 907 (1991).

We are not persuaded. It is undisputed that the petitioner received his advice regarding the Rule 4–215(a) requirements via a videotape of a District Court judge, rather than by advice given, live, by that judge. There is, moreover, no question as to the accuracy of the record of what occurred—the colloquy between the court and the petitioner—each time the petitioner appeared before a judge of the District Court, as opposed to being shown a videotape of a judge providing mandated advice or instruction, or of the Circuit Court. The only uncertainty is which of three videotapes of a judge giving the Rule 4–215(a) advice, each essentially the same as far as the substance of the advice is concerned, was shown to the petitioner.

We conclude that *Mitchell* is dispositive. It was error to order a limited remand.[8] *See State v. Stallings*, 658 N.W.2d 106, 2003 Iowa Sup. Lexis 19 (2003) (the inadequacy of record

---

"In circuit court, if a defendant who has appeared before that court pursuant to section (a) of this Rule appears without counsel on the date set for a hearing or trial and indicates a desire to have counsel, the court shall permit the defendant to explain the appearance without counsel. If the court finds that there is a meritorious reason for the defendant's appearance without counsel, the court shall continue the action to a later time and advise the defendant that if counsel does not enter an appearance by that time, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds that there is no meritorious reason for the defendant's appearance without counsel, the court may determine that the defendant has waived counsel by failing or refusing to obtain counsel and may proceed with the hearing or trial."

8. Given our determination with respect to the ordered limited remand, it is unnecessary that we address whether the appellant provided an adequate record for the court to review, and we do not do so; however, we note, as the petitioner submits, that the issue of the remedy for an inability to reconstruct a trial record for appellate review and the requirements that must be met for a new trial was discussed at length in *Wilson v. State*, 334 Md. 469, 639 A.2d at 696 (1994).

to show sufficient waiver of right to jury trial not curable by limited remand).

## III.

Under both Federal and Maryland Law, it is well settled that criminal defendants are guaranteed the right to the assistance of counsel in a criminal case. *See* U.S. Const. Amend. VI;[9] *see also,* Md. Decl. Rts. Art 21;[10] *Lettley v. State,* 358 Md. 26, 33, 746 A.2d 392, 396 (2000) ("The Sixth Amendment to the United States Constitution . . . and Article 21 of the Maryland Declaration of Rights . . ., as a safeguard necessary to ensure fundamental human rights of life and liberty, guarantee to any criminal defendant the right to have the assistance of counsel."); *see also Glasser v. United States,* 315 U.S. 60, 69, 62 S.Ct. 457, 464, 86 L.Ed. 680, 698 (1942); *Austin v. State,* 327 Md. 375, 381, 609 A.2d 728, 730–31 (1992).

■■ The standard in Maryland for an effective waiver of counsel mirrors the standard established by the Supreme Court in *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), *Adams v. U.S. ex. rel. McCann,* 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942), among other cases: to be valid, the waiver must be "knowing and intelligent." *Fowlkes v. State,* 311 Md. 586, 609, 536 A.2d 1149, 1161 (1988); *Maus v. State,* 311 Md. 85, 112, 532 A.2d 1066, 1079 (1987); *Howell v. State,* 293 Md. 232, 236, 443 A.2d 103, 105 (1982).

■■ To address these concerns, Maryland adopted Rule

---

**9.** The Sixth Amendment provides in pertinent part:

"In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."

**10.** Article 21 of the Maryland Declaration of Rights provides in pertinent part:

"That in all criminal prosecutions, every man hath a right . . . to be allowed counsel. . . ."

4–215.[11]   *See Johnson v. State,* 355 Md. 420, 444, 735 A.2d 1003, 1016 (1999), in which this Court observed:

> "Maryland Rule 4–215(a) implements the constitutional mandates for waiver of counsel, detailing a specific procedure that must be followed by the trial court in order for there to be a knowing and intelligent waiver. *Vincenti v. State,* 309 Md. 601, 604, 525 A.2d 1072, 1074 (1987); *Fowlkes,* 311 Md. at 609, 536 A.2d at 1161.   Whether the defendant's waiver is expressly made to the judge by requesting to proceed to trial pro se, by inaction through simply appearing at trial without counsel present, or through discharging an attorney whose appearance has been entered, the trial court must comply with Md. Rule 4–215 in order for the defendant's waiver of counsel to be valid."

In practical terms, therefore, "Rule 4–215 exists as a safeguard to the constitutional right to counsel, providing a precise "checklist" that must be strictly complied with before a defendant's waiver can be considered valid," *id.* at 426, 735 A.2d at 1006; it "is a bright line rule that requires strict compliance in order for there to be a 'knowing and intelligent' waiver of counsel by a defendant." *Id.* at 452, 735 A.2d at 1020.   *See also Vincenti v. State,* 309 Md. 601, 604, 525 A.2d 1072, 1074 (1987)("[T]he rule implements the constitutional mandates for waiver of counsel, detailing a specific procedure that must be followed by the trial court in order for there to be a knowing and intelligent waiver.").   Not only is the Rule mandatory and subject to strict compliance, its violation cannot be "harmless error." *Moten v. State,* 339 Md. 407, 409, 663 A.2d 593, 595 (1995); *Parren v. State,* 309 Md. 260, 278, 523 A.2d 597, 605–606 (1987).

---

11.   It is important to note that Rule 4–215 imposes requirements that exceed constitutional standards. *State v. Wischhusen,* 342 Md. 530, 543, n. 10, 677 A.2d 595, 601, n. 10 (1996); *see also Brown v. State,* 103 Md.App. 740, 654 A.2d 944 (1995) *aff'd,* 342 Md. 404, 676 A.2d 513 (1996).

■ In none of the four appearances the petitioner made before a court—three in the District Court and one in the Circuit Court—did the judge before whom he appeared advise him in accordance with Rule 4–215(a) or ascertain whether he understood the rights the Rule addresses. On the first occasion, the judge, having ascertained that an advice of rights videotape had been shown to the group of defendants, of which the petitioner presumably was a part, advised the petitioner of the charges, possible penalties, the preliminary hearing date and, after being apprised of the nature of the charges, that the bail remained unchanged. On the second District Court appearance, the State nolle prossed the felony charges, necessitating a postponement, whereupon the court informed the petitioner that he had the right to retain private counsel and of the requirement that he consult the Public Defender ten days before the next trial date. The petitioner's request for postponement was denied on his next appearance in the District Court, during the course of which the court noted that the petitioner had three months to obtain counsel. In the Circuit Court, the judge inquired pursuant to Rule 4–215(d), but did not provide the advice mandated by Rule 4–215(a).

To be sure, as we have seen, a Circuit Court judge may rely on the compliance by a District Court judge with Rule 4–215(a). Because, in this case, the requirement that each defendant be advised pursuant to Rule 4–215(a) was discharged by showing a videotape of a judge giving the required advice and that viewing was followed by the petitioner being taken before the court to complete the bail review process, the question whether there was compliance on which the Circuit Court judge could rely must depend upon the combined adequacy of the videotaped advice and the interaction between the bail review judge and the defendant. Stated differently, and as posed by the petitioner, the critical question is whether the requirements of Maryland Rule 4–215(a) can be satisfied by merely showing a defendant a videotape of the advisements being given. We answer that question in the negative, believing that it is not sufficient simply to demonstrate that a defendant has been advised of his or her rights; rather, it is

necessary that the court be satisfied that the defendant understood those rights, and there is a basis for the court's satisfaction in that regard.

As indicated, to be effective, a waiver of the right to counsel must be made knowingly and intelligently. When that requirement is considered in conjunction with the fact that Rule 4–215(a) is mandatory and demands strict compliance, it follows ineluctably that, in complying with the Rule, more is required of a judge than merely exposing the defendant to the Rule's requirements. Simply advising the defendant as the Rule prescribes is not sufficient; the judge must endeavor to insure that the defendant understands the advice. Indeed, unless the defendant understands the advice, his or her subsequent waiver of counsel will not, and could not be, knowing and voluntary. Thus, the judge's obligation is not just to offer the advice and instructions, but also to inquire of the defendant sufficiently to satisfy him or herself that the defendant understands them.

*Johnson, supra,* 355 Md. 420, 735 A.2d 1003, although not directly on point, is instructive. There, this Court held inadequate advisements pursuant to Rule 4–215(a), given to a defendant, piecemeal, by more than one judge over more than one court appearance. The rationale given to justify the holding has particular relevance to the case sub judice:

"In short, any Md. Rule 4–215(a)(1)–(5) advisements that Johnson received were inadequate and given to him in an incomplete manner in different courts by different judges, all resulting in likely confusion on the part of the defendant. Nowhere in the record is there evidence that any one circuit court judge went through the section (a) litany with Johnson, point-by-point as required. Indeed, the record indicates that the only judge who mentioned Md. Rule 4–215 to Johnson was Judge Nalley on the day of his trial, and even then he did not go through the complete subsection (a) advisement. For the rule to be an effective constitutional safeguard, it contemplates defendants receiving the advisements during their 'first appearance in court without counsel,' well before the day of trial.

"We conclude that to avoid confusion on the part of an accused and to protect the fundamental right to counsel, the subsection (a) advisements must be given in strict accordance with Md. Rule 4–215, by the correct court and not piecemeal. A 'knowing and intelligent' waiver of counsel can only occur when there is strict compliance with the rule."

*Id.* at 461, 735 A.2d at 1025.

The cases that have addressed the issue of videotaped or *en masse* advisements reach a consistent result. *See Swensen v. Municipality of Anchorage,* 616 P.2d 874, 877 (Alaska 1980) (upholding an *en masse* arraignment procedure consisting of "the recitation of rights to the group, followed by the questioning as to each defendant concerning whether he or she understood those rights"); *McIntire v. State,* 42 P.3d 558, 562 (Alaska App.2002) (reversing conviction, where, although the videotape explained the right to counsel and the benefits of counsel, the record did not reflect "the fact that the magistrate specifically addressed [the defendant] concerning his right to counsel in the particular case and that he had clearly waived his right to counsel and emphatically invoked his right to represent himself"); *V.S.J. v. State,* 793 So.2d 104, 105–06 (Fla.App.2001) (noting that, while *en masse* advisements provide "some convenience," they also "reduce[ ] the probability that every accused will be adequately and effectively advised of his or her constitutional rights" and, on that record, "we have no way of knowing that V.S.J. was present or attentive at the time the judge gave his 'speech' concerning her rights"); *N.M. v. State,* 791 N.E.2d 802, 807 (Ind.App.2003) (holding that waiver of counsel not knowing and intelligent where record unclear as to whether juvenile and her mother paid attention to rights advisement video shown in courtroom); *M.R. v. State,* 605 N.E.2d 204, 206 (Ind.App.1992) ("An *en masse* advisement of rights when coupled with a trial judge's personal interrogation of the defendant passes constitutional muster"); *State v. Bayer,* 102 Ohio App.3d 172, 656 N.E.2d 1314, 1319 (1995) ("[T]his one-sided 'rights' colloquy addressed to all of the defendants, *en masse,* fails to provide the requi-

site discourse between the court and the accused to ensure comprehension of these rights.").

The same result has been reached in the context of the waiver of guilty pleas and jury trials. In *Snowe v. State,* 533 N.E.2d 613 (Ind.App.1989), the issue was the propriety of the trial court's denial of the defendant's motion to withdraw her guilty plea. She had pled guilty at misdemeanor traffic court after being "advised of her rights by a televised advisement given to all defendants before the commencement of" that court. *Id.* at 615. Critical to her motion was the argument that the record did not demonstrate that the plea was knowingly and intelligently made. *Id.* After acknowledging the acceptability of *en masse* advisements, when there has been personal interrogation by the court to determine the defendant's understanding of the rights and the concept of waiver, *id.* at 616, citing *French v. State,* 472 N.E.2d 210, 212 (Ind. App.1984); *James v. State,* 454 N.E.2d 1225, 1227 (Ind.App. 1983), the court reviewed the evidence from which it concluded that the record in that case was inadequate to demonstrate a knowing and intelligent plea:

"Here, the record is silent as to whether Snowe's guilty plea was entered intelligently and voluntarily and whether [she] understood [she] was waiving those rights by pleading guilty. At the arraignment, only the following colloquy took place:

"COURT: Did you hire a lawyer?

"MS. SNOWE: No, sir. I spoke with one.

"COURT: Okay. What is it you want to do then?

"MS. SNOWE: Plead guilty, sir.

"COURT: A plea of guilty of Driving While Intoxicated.

"MS. SNOWE: Yes, sir.

"COURT: We'll refer you to the Alcohol Countermeasure Program for your interview. Then be back here for sentencing at 9:00 November 10th. Step over here for your papers.

"Additionally, the court's entry merely states:

'Defendant appears in person. Initial hearing held. Defendant knowingly and voluntarily waives right to attorney and trial. Plea of guilty. Finding of guilty. Referred to ACP. Sentencing deferred to: 9:00 A.M. on 11/10/87.'

"From the record, there is no indication Snowe ever viewed or understood the televised version of her rights. The trial judge made no determination on the record of whether Snowe understood the charge, the rights she was waiving, or the sentencing possibilities, as required by I.C. 35–35–1–2. Because the record fails to make such an affirmative showing, we cannot say her plea was knowing, intelligent, and voluntary."

*Id.* at 617. *See also State v. Stallings*, 658 N.W.2d 106, 111 (Iowa 2003), in which the court, addressing the adequacy of the defendant's waiver of a jury trial, commented on the necessity that the record reflect the waiver and the role and value of the in-court colloquy:

"While neither a written waiver nor an in-court colloquy is constitutionally mandated to establish a knowing, voluntary, and intelligent waiver, practical considerations suggest that a written waiver as well as an in-court colloquy should be used to assure a proper waiver. For example, a defendant might be shown through an in-court colloquy to have a mental condition that impairs his ability to understand the waiver. . . . The court may also, through the colloquy, determine if a proposed waiver decision was the product of duress or coercion."

(Citation omitted).

In *M.R.*, the juvenile and his mother signed a written advisement of counsel, which informed the child of his right to counsel and that one would be appointed by the court, if his parents could not afford to retain counsel. Rather than inform the child personally and in court as to his right to counsel, the juvenile judge had made a video recording, which was shown to the juvenile and his mother. In addition to those advisements and the dispositional alternatives available

to the court, the video instructed that the judge should be informed if further explanation were needed or the rights were not understood. 605 N.E.2d at 206. Against this backdrop, the court concluded:

> "*Dearing* [*v. State*, 229 Ind. 131, 95 N.E.2d 832 (1951)] does not require a face to face advisement of rights by the trial judge. It requires that M.R. and his mother be fully informed of that right and knowingly waive it prior to M.R. making admissions of delinquency, as he did in this case. Given the judge's face to face instruction on M.R.'s constitutional rights coupled with the prior written advisement of rights and videotape viewing, M.R. and his mother were fully advised of the right to counsel at public expense if they were indigent and desired representation by counsel. With such exhaustive advisements, the waiver of right to counsel was made with knowledge of the right to counsel at public expense. Thus, the waiver of counsel at public expense was freely and voluntarily given. The trial court did not err in this regard."

*Id.*

*N.M.* is not to the contrary. Similar to the case in *M.R.*, *N.M.* and her mother signed a written advisement of rights, although it did not indicate that counsel would be appointed if N.M.'s parents could not afford to retain one. Unlike in *M.R.*, however,

> "it [was] unclear whether N.M. and Magness had access to the same video that was played for M.R. and his mother. Magness testified at the hearing on the motion for relief from judgment that she 'saw the tape [of Judge Payne] being played on the monitors. I can't say that I heard it.' ... N.M. testified, 'When I first came in, before I even came, when I was still in greens, when I very, very first came in, they had it, it was already playing when I came in there and I ... they didn't tell me I had to watch it.' ... The State presented neither witnesses nor a copy of the videotape."

791 N.E.2d at 806. Therefore, acknowledging the *M.R.* holding, the court concluded:

> "[T]he law surely contemplates the defendant be told she needs to listen because she is about to be advised of her rights. Given the ubiquitous nature of television in public waiting areas and the plethora of court-based reality and drama television shows, a typical viewer might not assume that she needs to listen to a judge speaking on a television."

*Id.* at 806–07.

The defendant in *Bayer*, having been convicted, after appearing pro se, of a first degree misdemeanor, challenged his conviction on appeal, arguing that the trial court "failed to advise him of his rights at the initial appearance, proceeded without affording [him] the opportunity to obtain counsel, and scheduled a pretrial without counsel." 656 N.E.2d at 1317. As indicated, the court found his arguments meritorious, rejecting the use of a "one-sided 'rights' colloquy." *Id* at 1319. To what the court had reference is best understood by repeating the court's description of the initial appearance proceedings:

> "At the initial appearance on February 22, 1994, appellant was allegedly provided with a copy of a pamphlet prepared by the Chardon Municipal Court which appellee claims fulfilled these dictates. . . . Then, prior to addressing appellant directly, the court read a standardized introduction to all who were in the courtroom:
>
> > 'This proceeding is known as the arraignment. It is your opportunity to enter a plea to the charge for which you are here. The possible pleas you can enter are " 'Guilty", "Not Guilty", or "No Contest". * * * If you enter a plea of "Not Guilty", I will ask you to see Mrs. Hanson, who is seated at the table to my left, and you will need to sign a Waiver of Speedy Trial and a Personal Recognizance Bond. If there is an accident involved, you can enter a plea of no contest and I make a finding of "Guilty." That finding of "Guilty" cannot be used against you in a civil suit.

'Each of you received a blue pamphlet when you checked in this morning. Please read this pamphlet when you get the opportunity this morning. The back page will tell you about the costs involved in addition to the fine. * * *'

"The record reveals that when appellant was called at the initial appearance he appeared before the court and was immediately required to enter a plea.... He pleaded not guilty. The court next asked appellant if he had an attorney, to which appellant indicated that he did not. The matter was then scheduled for a pretrial. Some other dialogue was had, but it was not of the nature commanded under Crim.R. 5 or Crim.R. 10 and did not demonstrate that appellant was afforded the opportunity to read the material in the booklet, or that he was literate, let alone able to discern its contents, including the nature of the charge, his right to counsel and right to a jury trial."

*Id.* at 1318–19 (footnotes omitted).

The only advisements the petitioner received that could qualify as meeting the Rule 4–215(a) requirements were neither delivered live nor individually. He was one of a group of defendants to whom the advisements were given *en masse* and the medium utilized for the purpose, albeit featuring a judge, was a videotape. Thus, the petitioner could not have asked questions while the rights were being explained and the instructions given and neither his individual concerns, nor those any of the other defendants were, or could have been, addressed. To be sure, the video advised the defendants to ask any questions and to raise concerns when brought before the court, when the petitioner's case was called, the interaction with the court was, the record reflects, focused and fleeting. In its entirety, it consisted only of the following:

"The Court: Okay. This group has seen the advice of rights, is that correct?

"Woman's Voice: Yes, sir, they have.

"The Court: Mr. Richardson, in case Number 2172, one count of distribution is a felony, 20 years, $25,000; one count of possession, 4 years and/or $25,000; resisting arrest

(inaudible) could receive a sentence not deemed cruel and unusual.

"Preliminary hearing is September 17th, Courtroom 3, 830 North Avenue. Pretrial.

"Woman's Voice: Gina (inaudible) for pretrial release services. For the record, Your Honor, this defendant does have a 52 page record, and this was the allegation: The police observed the defendant looking into a pill container. They come back with a field interview.

"He then threw that container into the street. They did recover 14 gel caps of suspected heroin. Current bail is set at $5,000 and pretrial is not requesting a change.

"The Court: The bail remains the same."

The court did not address the petitioner with respect to whether he had viewed the videotape. It did not ask the petitioner whether he understood the rights explained to him. It did not invite the petitioner to ask questions or even inquire whether he had any. The only time the court addressed the petitioner was to advise him of the charges, the possible penalties and the place and date of the preliminary hearing. Significantly, the petitioner was not asked whether he understood the charges or their consequences or had questions with regard to the preliminary hearing.

We conclude that this record does not reflect, not to mention demonstrate or ensure, clearly, that the petitioner comprehended the rights of which he was presumably informed. What occurred in this case compares unfavorably with the one-sided, *en masse* rights colloquy found lacking in *Bayer*. It is grossly unacceptable and undermines the realization of the true purpose of Rule 4–215.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT FOR NEW TRIAL. COSTS IN THIS COURT AND IN**

THE COURT OF SPECIAL APPEALS TO BE PAID BY
THE MAYOR AND CITY COUNCIL OF BALTIMORE.

Judge RAKER joins in the judgment only.

Concurring Opinion by HARRELL, Judge, which
BATTAGLIA, J., joins.

I agree with the Court's opinion. I write supplementally
only to underscore that, as I understand the Court's opinion,
the use by a court of *en masse* videotape advisements to
appraise defendants of the relevant rights is not condemned
generally by our decision in this case. The Court holds:

> that *merely* showing a defendant a videotape of a judge
> providing the advice and instruction required by Rule 4–
> 215(a) is an insufficient predicate for a finding of waiver of
> counsel by inaction. At the least, there must be some
> inquiry to determine the defendant's understanding of the
> advice and instructions so given.

Majority op. at 361–62, 849 A.2d 494–95 (emphasis added).
This case does not present the situation where the defendant
was informed of his rights by video and a trial judge subse-
quently made an inquiry to determine the defendant's under-
standing of the advice and instructions given in the video.
Rather, there was no individual, particularized inquiry in this
case as to whether Richardson understood his rights as ex-
plained in the video. As the Court's opinion points out,
several jurisdictions employ a procedure consisting of the
video recitation of rights to a group, followed by an individual
inquiry by a judge where each defendant is questioned sepa-
rately to see if he or she understood his or her rights. *See*
majority op. at 369–70, 849 A.2d 499–500. Such a procedure
should be acceptable in Maryland as well.

Judge BATTAGLIA authorizes me to state that she joins in
the view expressed here.