958 N.E.2d 808 (2011)
A.A.Q., Appellant-Respondent,
v.
STATE of Indiana, Appellee-Plaintiff.
No. 71A03-1105-JV-239.
Court of Appeals of Indiana.
December 6, 2011.
*810 Elizabeth Hardtke, Public Defender Department, South Bend, IN, Attorney for Appellant.
Gregory F. Zoeller, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

OPINION
BAKER, Judge.
Appellant-respondent A.A.Q. appeals his adjudication as a juvenile delinquent for committing an act that would have been Trespass,[1] a class A misdemeanor, if committed by an adult. Specifically, A.A.Q. maintains that the delinquency finding must be set aside because he did not knowingly and intelligently waive his right to counsel at the initial hearing. A.A.Q. also argues that it was an abuse of discretion for the juvenile court to have placed him in the Southwest Indiana Regional Youth Village (Youth Village) following the dispositional hearing. Concluding that the juvenile court properly determined that A.A.Q. and his parents waived the right to counsel and finding no other error, we affirm the judgment of the juvenile court.

FACTS
On September 24, 2010, A.A.Q., who was sixteen years old at the time, attended a football game at Mishawaka High School. A.A.Q. had been suspended from school and was ordered to stay off school property. A.A.Q. became belligerent and was arrested after he ignored a police officer's request to leave the premises. At the time of the arrest, A.A.Q. was found in possession of Cyclobenzaprine Hydrochloride, a controlled substance.
On December 28, 2010, the State filed a delinquency petition against A.A.Q. for trespass. A.A.Q. was also alleged to be a runaway under a separate cause number. On January 28, 2011, A.A.Q. and his parents met with an intern from the public defender's office. That same day, at the initial hearing, A.A.Q., his mother, and his biological father, admitted that they had watched a video in the court house lobby concerning A.A.Q.'s constitutional rights, and none of them had any questions.
During the initial hearing, the following exchange occurred between the juvenile court judge, A.A.Q., and his parents:
THE COURT: [A.A.Q.] I need to make sure that you and your family understand the rights that exist for you in this court, that you know what the charges are that have been filed and that you understand a bit about court procedure. Each of you by now should have probably watched the video in the lobby a *811 couple of times. Any questions [A.A.Q.] about what the Judge talked about: Okay, you need to answer out loud [in] the microphone.
A.A.Q.: No.
THE COURT: Parents, questions at all?
MOTHER: No.
FATHER: No, sir.
THE COURT: And [A.A.Q.] you're asking or somebody is asking that I appoint a Public Defender, is that correct?
A.A.Q.: Um, I don't know.
THE COURT: Parents are?
MOTHER: Yes.
THE COURT: Alright, and you understand as parents that when we appoint a Public Defender it's possible that later you could be required to pay back the county for the expense that is involved. You understand that?
MOTHER: Okay, um, are we admit or denial today?
THE COURT: Pardon me?
MOTHER: Um, I didn't think we needed an attorney at all.
THE COURT: Well, that's a choice you have to make. Somebody must have had you talk to Ms. Laux who is a public defender.
MS. LAUX: Well, it wasI had the Intern talking to them.
THE COURT: Okay. So you, can make a value judgment today to not have an attorney or you can make a value judgment to have an attorney and there are two options if you do want a lawyer, one it [sic] to hire a private attorney, other is to have the court appoint a public defender, a free attorney. However, when we appoint a "free attorney" it's not totally free because the court could require parents to pay back the county for the cost of the public defender.
MOTHER: I understand.
THE COURT: And the father agrees?
FATHER: Um, yes, sir.
* * *
THE COURT: Okay, Ms. Laux we'll show waiver of counsel. You agree with that choice by your mom?
A.A.Q.: Yeah.
THE COURT: Okay. Obviously, you can change your mind later.
MOTHER: Okay.
THE COURT: Either hire a lawyer or
MOTHER: Okay.
THE COURT: Have the court appoint a public defender. Ms. Laux as a matter of preliminary information of the court, had there been some discussion with the Prosecutor on a plea offer?
MS. LAUX: Yes, they were willing to, if he admitted to the criminal trespass, that they would dismiss the runaway.
Tr. p. 3-6.
A.A.Q. then admitted to the criminal trespass charge in exchange for a plea deal with the State to dismiss the runaway allegation. The juvenile court dismissed the runaway allegation and released A.A.Q. to the custody of his mother, pending the final disposition of the case. At that time, A.A.Q. was ordered to comply with all academic requirements and home rules.
On March 1, 2011, the juvenile court conducted a status hearing, at which time the court learned that A.A.Q. did not appear for a pre-dispositional report meeting. It was also determined that there were problems with A.A.Q. at home and at school.
At A.A.Q.'s mother's request, the juvenile court appointed a public defender for purposes of the dispositional hearing. Because of A.A.Q.'s misconduct, the juvenile *812 court ordered him detained in the county juvenile facility pending disposition of the case.
On April 21, 2011, Indiana Child Services filed a report, recommending that A.A.Q. be returned to live with his mother for home-based treatment, monitoring, and substance abuse assessment. However, the St. Joseph County Probation Department filed its report on April 25, 2011, recommending that A.A.Q. be placed on indefinite probation with strict conditions, including that he successfully complete placement at Youth Village.
Following the dispositional hearing on April 25, 2011, the juvenile court ordered A.A.Q. placed in Youth Village and placed on indefinite probation. A.A.Q. now appeals.

DISCUSSION AND DECISION

I. Right to Counsel
A.A.Q. argues that the delinquency finding must be set aside because there was not a valid waiver of the right to counsel. More particularly, A.A.Q. maintains that the trial court did not advise him of the hazards of proceeding pro se and the record fails to demonstrate that A.A.Q. and his parents understood their constitutional rights and knowingly and intelligently waived them.
In resolving this issue, we initially observe that a trial court's determination that an accused has voluntarily, knowingly, and intelligently waived his right to counsel is reviewed on appeal de novo. Drake v. State, 895 N.E.2d 389, 393 (Ind. Ct.App.2008). That said, the right to counsel is guaranteed in juvenile cases both by the federal constitution and Indiana statutory authority. N.M. v. State, 791 N.E.2d 802, 805 (Ind.Ct.App. 2003).
For a juvenile's waiver of the right to counsel to be valid, it must be freely and voluntarily given. D.H. v. State, 688 N.E.2d 221, 224 (Ind.Ct.App. 1997). Before a juvenile can waive the right to counsel, the record should demonstrate that the juvenile was advised of the nature, extent, and importance of the right to counsel and the consequence of waiving that right. Id. Similarly, the juvenile court should warn a defendant who proceeds pro se of the dangers and pitfalls of self-representation.
The failure to adequately advise a juvenile in a delinquency proceeding of his right to counsel is fundamental error. A.S. v. State, 929 N.E.2d 881, 887 (Ind.Ct. App.2010). Moreover, in a juvenile delinquency adjudication, the State bears a heightened burden in securing the juvenile's waiver of the right to counsel. R.W. v. State, 901 N.E.2d 539, 543 (Ind.Ct.App. 2009). Thus, the record must demonstrate either that the juvenile was represented by counsel or that the juvenile waived representation by counsel. D.H., 688 N.E.2d at 223-24.
When examining the above exchange among the juvenile court, A.A.Q., and his parents, it certainly would have been the better practice to have advised A.A.Q. and his parents on the record of the various disadvantages of proceeding without counsel. Poynter v. State, 749 N.E.2d 1122, 1125-26 (Ind.2001). And the juvenile court should and could have inquired more specifically into A.A.Q. and his parents' understanding of the rights that they been advised of in the video presentation and might have better explained a parent's potential obligation to reimburse the county for expenses involved with the appointment of counsel. See N.M., 791 N.E.2d at *813 806-07.[2]
However, we do look to the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused to determine whether there has been an intelligent waiver of the right to counsel. Id. That said, the record in this case demonstrates that A.A.Q. and his parents had consulted with an intern at the public defender's office before deciding to waive counsel at the initial hearing. Tr. p. 4. Moreover, it was the public defender who had secured a plea deal for A.A.Q. Id. Therefore, the record does, in fact, show that A.A.Q. was represented by counsel prior to, and at, the initial hearing. Put another way, it is apparent that counsel actually assisted A.A.Q. and his family in ultimately waiving his right to counsel at the initial hearing stage.
Finally, the record reflects that A.A.Q. and his parents had already determined that A.A.Q. would admit to the criminal trespass allegation in exchange for the dismissal of the runaway allegation. Id. at 5-6. Therefore, under these facts and circumstances, we can reasonably conclude that A.A.Q. and his parents knowingly and intelligently waived his right to counsel, to the extent that the public defender may not have officially entered an appearance and represented A.A.Q. at the initial hearing. Therefore, we decline to set aside the finding of delinquency on this basis.

II. Disposition and Placement
A.A.Q. argues that the juvenile court abused its discretion by ordering his placement in Youth Village. Specifically, A.A.Q. maintains that a less restrictive disposition was available.
We note that the disposition of a juvenile who has been adjudicated a delinquent is a matter that is committed to the sound discretion of the juvenile court, subject to the least harsh disposition. R.H. v. State, 937 N.E.2d 386, 388 (Ind.Ct. App.2010). A juvenile court's dispositional order may be overturned on appeal only for an abuse of discretion. Id. An abuse of discretion occurs where the juvenile court's actions are clearly against the logic and effect of the facts and circumstances before the juvenile court or the reasonable inferences that may be drawn therefrom. Id.
Dispositional decrees where a juvenile is adjudicated a delinquent are intended to promote rehabilitation. R.J.G. v. State, 902 N.E.2d 804, 806 (Ind.2009). This is in keeping with the legislative policy that juveniles are to be "treated as persons in need of care, protection, treatment, and rehabilitation." Id. The goal in the juvenile justice system is to rehabilitate juveniles so that they do not become adult criminals. R.H., 937 N.E.2d at 388. Thus, the juvenile court is provided with a *814 myriad of dispositional alternatives to permit the court to find the disposition that best fits the unique and varying circumstances of each child's problems. Because of the need to tailor dispositions for each individual child, the juvenile court is accorded great latitude and flexibility in its choice of specific dispositions for a juvenile adjudicated delinquent. M.T. v. State, 928 N.E.2d 266, 268 (Ind.Ct.App.2010), trans. denied.
In this case, we acknowledge that the particular act for which A.A.Q. was adjudicated a delinquent is not heinous. As noted above, he knowingly trespassed on school property after having been suspended from school. A.A.Q. refused to leave after being told by a police officer to do so, and he became hostile and belligerent. A.A.Q. exhibited no remorse for his actions and minimized his behavior.
This act was also indicative of other problems. More specifically, this was not the first instance that A.A.Q. had trespassed on school property while suspended, and he possessed controlled substances at the time of his arrest. This was also not A.A.Q.'s first brush with the juvenile justice system, as he had previously been alleged a runaway.
A.A.Q. also had been previously suspended for taking a letter opener to school, and he exhibited severe behavioral problems at school. A.A.Q. has a problem with marijuana, and he has a history of disobeying directives from his parents and school officials. Mother has practically no control over A.A.Q., and she allows him to smoke marijuana "because it is easier on her than arguing." Appellant's App. p. 22, 27-28. A.A.Q. is defiant, disrespectful of his mother, and he destroys things at home. And Mother acknowledges that she is afraid of him. Id. at 27-28.
A.A.Q. has refused to participate in counseling and he failed to attend night classes during the pendency of this case, as he was required to do as a condition of his release to his mother's custody after the initial hearing. A.A.Q. also failed to attend a predisposition interview, simply because he did not want to attend. Tr. p. 6-7, 16-17.
In light of the above, it is apparent that A.A.Q.'s attitude issues and defiant behavior cannot be addressed by his mother. In fact, the record demonstrates that A.A.Q. requires a structured environment, and it was established that his behavior had improved while he was in the juvenile facility following the status hearing. Appellant's App. p. 30. Moreover, there is no showing that the family will be severely impacted by the distance and separation because A.A.Q.'s mother can visit and video conferencing is available. Id. And by the time of the dispositional hearing, A.A.Q. was seventeen years old, thus giving the juvenile justice system little time to work with him.
In sum, we conclude that the juvenile court properly exercised its discretion in determining that a more restrictive disposition is necessary to protect the community and serve A.A.Q.'s best interests.
The judgment of the juvenile court is affirmed.
KIRSCH, J., concurs.
BROWN, J., concurs in result.
NOTES
[1] Ind.Code § 35-43-2-2.
[2] As an aside, it has recently been reported that the juvenile court judge in Wayne Superior Court makes it a priority in every case to appoint an attorney for a juvenile as soon as the court learns that the child has been detained. Michael W. Hoskins, Improving a Child's Access to Counsel, Indiana Lawyer, November 9-22, 2011, at 1, 20. Also, the Indiana State Bar Association has submitted a draft to the State's judiciary rulemaking committee involving a juvenile's right to counsel. That proposal puts in place a systematic requirement that youth have adequate attorney representation from the start of their experience in the juvenile justice system. The proposed rule provides for, among other things, the appointment of counsel before the detention hearing or initial hearing, whichever occurs first. And the child cannot waive the right to counsel without first engaging in a meaningful consultation with counsel. Id.

Such uniform procedures may, in some instances, expedite matters and save taxpayer dollars. And perhaps some of the right to counsel issues, like those presented today, might very well be avoided. Id. at 20.