## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 26 2018, 9:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John M. Haecker
Squiller & Hamilton, LLP
Auburn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

E.C.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

June 26, 2018

Court of Appeals Case No.
18A-JV-76

Appeal from the DeKalb Circuit Court

The Honorable Kurt B. Grimm, Judge

Trial Court Cause No.
17C01-1706-JD-20

**Bradford, Judge.**

# Case Summary

[1]     On August 9, 2017, E.C. was adjudicated to be a delinquent child for committing what would have been Class A misdemeanor resisting law enforcement if committed by an adult and was placed in a juvenile detention facility. The State subsequently filed a petition to modify the prior dispositional order after E.C. was involved in a number of incidents at the facility. During a hearing on its petition, the State recommended placement in a juvenile detention facility operated by the Department of Correction ("DOC"). Both E.C.'s attorney and her Guardian Ad Litem ("GAL") spoke on E.C.'s behalf during the hearing and indicated that they agreed with the State's petition and placement recommendation. On appeal, E.C. argues that the juvenile court violated her due process right to be heard during the hearing. We affirm.

# Facts and Procedural History

[2]     On June 13, 2017, the State alleged that E.C. was a delinquent child for committing what would be Level 6 felony battery to a public safety officer and two counts of Class A misdemeanor resisting law enforcement if committed by an adult. On August 9, 2017, E.C. admitted that she had committed what would be Class A misdemeanor resisting law enforcement if committed by an adult. The juvenile court adjudicated E.C. to be a juvenile delinquent, entered a dispositional order, and placed E.C. at the Youth Opportunity Center ("YOC").

[3] E.C. was involved in a number of incidents at YOC during November of 2017. On November 3, 2017, a YOC staff member was injured while intervening in an altercation between E.C. and another resident. E.C. was placed in restraints on November 10, 2017, after verbally and physically abusing a member of the YOC staff. On November 16, 2017, E.C. started a fight with a peer in another resident's unit, and when staff attempted to intervene, E.C. punched the staff member in the face with a closed fist. E.C. and several other residents created a disturbance at the facility on November 27, 2017, during which E.C. broke a fire alarm and attempted to use the broken pieces of the alarm as a weapon. E.C. pushed and lunged at staff members and grabbed workers in an attempt to impede their attempts to separate residents. E.C. also attempted to punch a police officer who responded to the situation. In light of these incidents, on December 6, 2017, the YOC informed the DeKalb County Probation Department that it was no longer able to provide care and treatment for E.C. due to her "noncompliance and aggressive behaviors." Appellant's App. Vol. II, p. 100.

[4] On December 11, 2017, the State filed a verified petition to modify the dispositional decree, requesting that the juvenile court remove E.C. from the YOC and to conduct a hearing to determine a proper placement. The next day, the juvenile court conducted a hearing on the State's petition. During the hearing, the juvenile court heard testimony that E.C. had previously been removed from five prior placements. E.C.'s probation officer, Kelly Mattes, testified that she had spoken with a counselor at the juvenile facility operated by

the DOC and believed that E.C. would benefit from the more structured and secure environment offered by that facility. The facility also offers therapeutic programs from which E.C. could potentially benefit. Mattes opined that there were no other less-restrictive placements appropriate for E.C.

[5] Megan Refner, the family case manager assigned to E.C.'s ongoing CHINS[1] case, agreed with Mattes's recommendation and opined that there were no other less-restrictive placements available for E.C. that would ensure both E.C.'s safety and that of the community. E.C.'s attorney, Darrick Brinkerhoff, presented argument on E.C.'s behalf, indicating that she did not want to be placed at DOC's juvenile facility. Brinkerhoff acknowledged, however, that "unfortunately there's … too many incidents [and] … there is no other option." Tr. Vol. II, p. 13. E.C.'s GAL, Cory Swagger, testified that while he had some concerns about placement in the DOC, he "agree[d] with the recommendations of the … Probation [Department] that the DOC is gonna be the safest, at the moment, for" E.C. Tr. Vol. II, p. 15. Following the hearing, the juvenile court awarded wardship to the DOC with a recommendation for treatment of E.C.'s mental health issues.

# Discussion and Decision

---

[1] The term CHINS is commonly used to describe cases in which a juvenile has been alleged to be a Child In Need of Services.

[6]     On appeal, E.C. challenges the juvenile court's order modifying the dispositional decree.

> The specific disposition of a delinquent is within the juvenile court's discretion, to be guided by the following considerations: the safety of the community, the best interests of the child, the least restrictive alternative, family autonomy and life, freedom of the child, and the freedom and participation of the parent, guardian, or custodian. We reverse only for an abuse of discretion, namely a decision that is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.

*K.S. v. State*, 849 N.E.2d 538, 544 (Ind. 2006) (internal citation and quotation omitted). The juvenile court is accorded "wide latitude and great flexibility in dealing with juveniles[.]" *C.T.S. v. State*, 781 N.E.2d 1193, 1203 (Ind. Ct. App. 2003).

[7]     "The standard for determining what due process requires in a particular juvenile proceeding is fundamental fairness." *D.A. v. State*, 967 N.E.2d 59, 64 (Ind. Ct. App. 2012) (internal quotation omitted). With respect to notice and the opportunity to be heard in juvenile delinquency cases, Indiana Code section 31-37-18-1.3 provides as follows:

> (a) The prosecuting attorney or probation department of the juvenile court shall provide notice of the date, time, place, and purpose of the dispositional hearing under this chapter to each:
>> (1) party or person for whom a summons is required to be issued under [Indiana Code section] 31-37-12-2; and

> (2) foster parent or other caretaker with whom the
> child is placed for temporary care;
>
> at the time the dispositional hearing is scheduled.
>
> (b) The court shall:
>
> > (1) provide a person who is required to be notified
> > under subsection (a) an opportunity to be heard; and
> > (2) allow a person described in subdivision (1) to
> > make recommendations to the court;
>
> at the dispositional hearing.

[8] The juvenile court afforded both E.C.'s attorney and GAL the opportunity to speak on her behalf during the hearing on whether to modify the dispositional order. Both E.C.'s attorney and GAL indicated that they agreed with the State's recommended placement. Given that the juvenile court allowed E.C.'s representatives to speak on her behalf, we conclude that the juvenile court complied with the statutory requirement affording the opportunity to be heard.[2]

[9] Moreover, we are unpersuaded by E.C.'s claim that she was entitled to make a statement of allocution. Article I, section 13 of the Indiana Constitution provides that "[i]n all *criminal prosecutions*, the accused shall have the right to … to be heard by himself and counsel[.]" (Emphasis added). In addition, Indiana's current allocation statute explains that

> When the defendant appears for sentencing, the court shall …
> afford counsel for the defendant an opportunity to speak on
> behalf of the defendant. The defendant may also make a

---

[2] Neither E.C. nor her attorney made any indication that E.C. wished to make a statement before the juvenile court and nothing in the record suggests that the juvenile court would not have allowed E.C. to speak on her own behalf if she had requested the opportunity to do so.

statement personally in the defendant's own behalf and, before pronouncing sentence, the court shall ask the defendant whether the defendant wishes to make such a statement. Sentence shall then be pronounced, unless a sufficient cause is alleged or appears to the court for delay in sentencing.

Ind. Code § 35-38-1-5. The above-quoted authorities reinforce the common law principal that the right to allocution is limited to criminal defendants.

[10] It is well-settled that "proceedings in juvenile court are civil proceedings, not criminal in nature and that an act of juvenile delinquency is not a crime." *T.K. v. State*, 899 N.E.2d 686, 687–88 (Ind. Ct. App. 2009) (internal quotation and brackets omitted). Dispositional decrees are intended to promote rehabilitation so that the juvenile does not become an adult criminal. *A.A.Q. v. State*, 958 N.E.2d 808, 813 (Ind. Ct. App. 2011). "This is in keeping with the legislative policy that juveniles are to be treated as persons in need of care, protection, treatment, and rehabilitation." *Id.* (internal quotation omitted). In light of the civil nature of juvenile proceedings, E.C. has failed to convince us that either the Indiana Constitution or relevant statutory authority provide a juvenile with the right to make the equivalent of an allocution statement prior to the pronouncement of a dispositional judgment.

[11] The judgment of the juvenile court is affirmed.

Baker, J., and Kirsch, J., concur.