## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

C.W.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner*

November 13, 2019

Court of Appeals Case No.
19A-JV-1077

Appeal from the Vigo Circuit
Court

The Honorable Sarah K. Mullican,
Judge

The Honorable Daniel W. Kelly,
Magistrate

Trial Court Cause No.
84C01-1902-JD-163

**Crone, Judge.**

# Case Summary

C.W. appeals the order ("the Modified Dispositional Order") modifying his disposition from strict formal probation to commitment to the wardship of the Department of Correction ("DOC") for placement at the Indiana Boys School following his adjudication as a delinquent child for committing an act that would be level 6 felony resisting law enforcement if committed by an adult. C.W. argues that he was denied due process when the trial court announced his modified disposition without him being be present, that the Modified Dispositional Order does not contain the required statutory findings in support of modification, and that the trial court abused its discretion in modifying his disposition. We conclude that C.W. waived his due process claim, that any error regarding the findings in support of modification does not amount to reversible error, and that the trial court did not abuse its discretion in modifying his disposition. Therefore, we affirm.

# Facts and Procedural History

C.W. was born in April 2003. All events relevant to this appeal occurred in 2019. On January 29, police responded to a report of a domestic disturbance at the residence where C.W. lived with his mother, brother, and stepfather. C.W. was heavily intoxicated from ingesting Xanax-laced gummy bears. Tr. Vol. 2 at 8, 14. Police attempted to place C.W. under arrest, but he resisted. He pulled away, and police took him to the ground. While police attempted to handcuff C.W., he continued resisting by kicking his legs, and one of the officers involved suffered a broken fibula.

[3] On February 5, the State filed a petition alleging that C.W. was a delinquent child for committing the following acts: Count 1, level 6 felony resisting law enforcement if committed by an adult; Count 2, class A misdemeanor domestic battery if committed by an adult; and Count 3, class A misdemeanor resisting law enforcement if committed by an adult. C.W. was held in the Vigo County Juvenile Center. A hearing on the delinquency petition was held on February 7 and 14. C.W. did not contest Count 1, and he and his mother acknowledged that he had a serious substance abuse problem. *Id*. at 15-17. Mother testified that C.W. had been so intoxicated the night he was arrested that he was foaming at the mouth and that the police had to carry him to the cell. *Id*. at 15-16. The trial court entered a true finding on Count 1, dismissed the remaining counts, set a dispositional hearing in thirty days so that C.W. could undergo a drug assessment, and released C.W. from detention.

[4] On March 7, the probation department submitted its predispositional report, in which it recommended a nine-month commitment to Indiana Boys School suspended to strict formal probation and that C.W. undergo a drug assessment and follow any recommendations. Appellant's App. Vol. 2 at 30. On March 14, the trial court held a dispositional hearing, at which C.W. appeared with his mother and defense counsel. C.W.'s probation officer, Tamara Carter, informed the court that she had contacted C.W.'s school and spoken with the school dean, who confirmed that C.W. had enrolled in school on February 25 but was present for only part of a day on February 26, and missed school on February 27 and 28. The trial court adopted the probation department's

recommendations and placed C.W. on nine months' strict formal probation. The court also ordered him to undergo a drug assessment and follow any recommendations, to submit to random drug screens, to enroll in and attend school, and to perform twenty hours of community service. *Id.* at 31. At the conclusion of the hearing, Carter administered a drug screen to C.W. Initially, C.W. told Carter that he did not want to take a drug screen. Tr. Vol. 2 at 29. He eventually submitted to the drug screen but told Carter that he was not going to pass. *Id.* He left the probation office angry. *Id.* at 31. C.W. did not attend school after the hearing. *Id.*

[5] On March 26, at about 4:00 a.m., police were dispatched to the intersection of Ninth and Washington Streets in Vigo County to investigate a report of an intoxicated person. *Id.* at 29. The police first encountered C.W.'s mother, who informed them that C.W. had run away from home and was high on Xanax-laced gummy bears. *Id.* The police found C.W. walking north on Ninth Street. He was stumbling on the sidewalk, was disoriented and confused, and was drooling from his mouth. *Id.* at 29-30. The police arrested C.W. for public intoxication and transported him to a hospital for evaluation and then to the Vigo County Juvenile Center. That same day, the probation department filed a modification report, recommending that the suspension of C.W.'s commitment to the wardship of the DOC for placement at Indiana Boys School be lifted. Appellant's App. Vol. 2 at 36.

[6] On April 4, the trial court conducted a modification hearing, at which C.W. appeared with his mother and defense counsel. The court heard testimony from

Carter and C.W.'s mother. C.W.'s mother testified that C.W. had an appointment for a drug assessment on April 10 and that she intended to enroll C.W. in GED classes. The trial court ordered C.W. to undergo the drug assessment and set a hearing for April 11. The trial court also issued an order concluding that "good cause" to grant the modification petition existed based on the following:

> [C.W.] was placed on probation on March 14, 2019 on charges of Resisting Law Enforcement and Domestic Battery. [C.W.] ran away from home and mother alleged he was high on gummy bears laced with Xanax. [C.W.] was then arrested on March 26, 2019 for public intoxication. [C.W.] has been truant from school since March 14, 2019.

*Id*. at 38.

[7] On April 11, the trial court reconvened the modification hearing. C.W. appeared with his mother and defense counsel. Carter confirmed that C.W. had taken the drug assessment and that she had received seven pages of the evaluation, but it did not include a recommendation. Carter told the court that she still recommended that C.W.'s suspension be lifted and that he be placed at Indiana Boys School, where he could receive drug treatment, counseling, and education. Tr. Vol. 2 at 44. Carter opined that C.W. would not otherwise follow through with schooling, drug treatment, or counseling. *Id*. She informed the court that C.W. had not attended school since the dispositional hearing, and that he had not started on the required community service. C.W.'s mother testified that the recommendations from C.W.'s drug assessment were

that he attend three classes a week and submit to random drug screens. *Id*. at 48. The trial court asked the State if it had any objection to C.W. filing the written recommendations from the drug assessment, and the State agreed that the court should have that information. *Id*. at 55. The court informed the parties that because it did not have all the information it needed and wanted to look at C.W.'s history in more detail, it would take the matter under advisement to allow C.W. to file the written recommendations from the drug assessment. *Id*. at 55. The court further explained that it would "get something out on this really quickly after that." *Id*. Mother asked whether she would have to come back because her work schedule would make that difficult. *Id*. at 56. The trial court informed mother that she would not have to return to court.

[8] On April 15, the trial court entered the Modified Dispositional Order with the following findings:

> [C.W.] has an extensive history with the Court beginning with his first adjudication in September of 2015. Despite a prior placement at ResCare, [C.W.] continues to break the law. He was placed on probation in this cause on March 14, 2019, and at that time was given a suspended commitment to the [DOC]. Since being placed on probation, [C.W.] has not attended school and on March 26, 2019, [C.W.] was arrested at 4:00 a.m. for public intoxication. Due to [C.W.'s] flagrant disregard for this Court's orders, the Court finds no alternative other than to lift the suspension and have [C.W.] committed to [DOC].
>
> ….

> The statements in the Probation Officer's Report and all attachments are adopted as findings, including any and all statements of reasonable efforts to provide services, and are incorporated by reference herein.

Appealed Order at 1. This appeal ensued.

# Discussion and Decision

## Section 1 – C.W. has waived his due process claim.

Although, C.W. was present at all the hearings held in his juvenile proceedings, he argues that he was denied due process when the trial court announced his modified disposition without him being present. However, C.W. fails to provide the standard for determining what process is due to a child in a delinquency proceeding or present his argument tailored to that standard.[1] Accordingly, he has waived this claim due to failure to present a cogent argument. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring each issue presented by appellant to be "supported by cogent reasoning" and each contention to be supported by "citations to the authorities, statutes, and the appendix or parts of the Record on Appeal relied on."); *Smith v. State*, 822 N.E.2d 193, 202-03 (Ind.

---

[1] "The standard for determining what due process requires in a particular juvenile proceeding is 'fundamental fairness.'" *D.A. v. State*, 967 N.E.2d 59, 64 (Ind. Ct. App. 2012). "A juvenile charged with delinquency is entitled to the 'common law jurisprudential principles which experience and reason have shown are necessary to give the accused the essence of a fair trial.'" *K.S. v. State*, 114 N.E.3d 849, 853 (Ind. Ct. App. 2018) (quoting *K.A. v. State*, 938 N.E.2d 1272, 1274 (Ind. Ct. App. 2010), *trans. denied*, (2011)), *trans. denied* (2019). "These principles include the right to have a competency determination, the right to notice of the charges, the right to counsel, the privilege against self-incrimination, and the right to confront witnesses, and, in the case of a modification, the right to an evidentiary hearing." *Id*.

Ct. App. 2005) ("Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), *trans. denied*.

## Section 2 – Any error regarding the trial court's findings supporting the modification of C.W.'s disposition does not amount to reversible error.

[10]    C.W. contends that the trial court failed to make the necessary findings in violation of Indiana law.  In addressing his contention, we observe that when issuing an order modifying a juvenile disposition, the court must comply with the requirements governing dispositional orders.  *See* Ind. Code § 31-37-22-3(c). Indiana Code Section 31-37-18-9(a) requires a dispositional decree to include "written findings and conclusions," as well as "specific findings" as to

> (1) The needs of the child for care, treatment, rehabilitation, or placement.
>
> (2) The need for participation by the parent, guardian, or custodian in the plan of care for the child.
>
> (3) Efforts made, if the child is removed from the child's parent, guardian, or custodian, to:
>
>> (A) prevent the child's removal from; or
>>
>> (B) reunite the child with;
>
> The child's parent, guardian, or custodian.

(4) Family services that were offered and provided to:

    (A) the child; or

    (B) the child's parent, guardian, or custodian.

(5) The court's reasons for the disposition.

(6) Whether the child is a dual status child under IC 31-41.[2]

The statute allows the trial court to "incorporate a finding or conclusion from a predispositional report as a written finding or conclusion upon the record in the court's dispositional decree." Ind. Code § 31-37-18-9(c).

C.W. asserts that "[n]one of the factual findings required by statute were made, which makes meaningful review on appeal impossible." Appellant's Br. at 11. We disagree. The Modified Dispositional Order found that C.W. had a long history with the trial court beginning in September 2015; C.W. had a prior placement at ResCare; just twelve days after being placed on probation for the current delinquency adjudication, C.W. was arrested at 4:00 a.m. for public intoxication; C.W. had not attended school since being placed on probation; and due to C.W.'s "flagrant disregard" for the court's order, the court had no alternative but to commit him to the wardship of the DOC. Appealed Order at

---

[2] Broadly speaking, Indiana Code Section 31-41-1-2(1) defines a dual status child as a child who is alleged to be or is presently adjudicated to be a delinquent child *and* who is alleged to be or is adjudicated to be a child in need of services.

1. The Modified Dispositional Order also adopted as findings the statements in the probation officer's report. C.W.'s probation officer prepared two reports, the predispositional report and the modification report, and therefore we consider statements in both reports. From these reports, we learn that C.W. lived with his mother, brother, and stepfather, that Mother has a prior criminal history and was unemployed, and that C.W.'s biological father was incarcerated.[3] Appellant's App. Vol. 2 at 26. C.W. summarized his family life as "not so good." *Id*. at 27.

[12] The reports also indicate that C.W. had previously been put on strict formal probation, which had to be repeatedly modified, including three extensions and detention in the Vigo County Juvenile Center. *Id*. at 24-25, 32-33. C.W. was offered home-based services, a psychological evaluation, and placement at ResCare as recommended by the evaluation. *Id*. at 30. C.W. admitted to carrying a handgun without a license, which he committed while staying with his mother on a pass from his placement at ResCare. *Id*. at 25, 34. In addition, the report indicates that C.W. was being disruptive at school, and after he changed schools, he was expelled from the new school because he was disruptive and combative. *Id*. at 24-25, 33. Although he had been enrolled in another school, he had not attended since his court hearing. *Id*. at 35. The

---

[3] Although the probation officer's report indicates that Mother is unemployed, she stated that she had a "work schedule" at the April 11 hearing. Tr. Vol. 2 at 56.

report states that C.W. hangs out with known juvenile delinquents, is a follower, and "doesn't seem like he wants to do the right thing." *Id*. at 34, 36.

[13] Despite C.W.'s protestations to the contrary, the findings in the Modified Dispositional Order and the probation department's reports provide information relevant to C.W.'s needs for care, treatment, rehabilitation, or placement, the need for participation by C.W.'s parents in his care, the family services that were offered, and the court's reasons for the disposition, and they are sufficient to facilitate meaningful appellate review. Although there is no finding specifically touching on whether C.W. is a dual status child, C.W. had notice of the allegations warranting modification, there was an evidentiary hearing at which he, his mother, and his counsel were present, and he directs us to no evidence in the record that would clearly support a finding that he was a dual status child. Under very similar circumstances, we have found that the failure to include a specific finding regarding dual status did not amount to reversible error. *See K.S. v. State*, 114 N.E.3d 849, 853-54 (Ind. Ct. App. 2018) (declining to reverse modified dispositional order on the grounds that court did not include finding on whether juvenile was a dual status child where juvenile was given notice of charges, had counsel, and was afforded an evidentiary hearing at which no evidence was offered that would support dual status finding), *trans. denied* (2019). Accordingly, we find no reversible error regarding the trial court's findings supporting the modification of C.W.'s disposition.

## Section 3 – The trial court did not abuse its discretion in modifying C.W.'s disposition.

Finally, C.W. asserts that the trial court abused its discretion in lifting his suspension and committing him to the wardship of the DOC when there were less restrictive dispositions available. In addressing this claim, we observe that the trial court "has wide latitude and great flexibility in its dealings with juveniles." *M.T.*, 928 N.E.2d 266, 268 (Ind. Ct. App. 2010), *trans. denied*. The choice of the specific disposition of a juvenile adjudicated a delinquent child will only be reversed if the [trial] court abuses its discretion. *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008). "An abuse of discretion occurs when the [trial] court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual inferences that can be drawn therefrom." *Id.*

"[T]he goal of the juvenile process is rehabilitation so that the youth will not become a criminal as an adult." *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010). The policy of this state and the operation and implementation of our juvenile justice system is to "ensure that children within the juvenile justice system are treated as persons in need of care, protection, treatment, and rehabilitation." Ind. Code § 31-10-2-1(5). "Thus, the [trial] court is provided with a myriad of dispositional alternatives to permit the court to find the disposition that best fits the unique and varying circumstances of each child's problems." *A.A.Q. v. State*, 958 N.E.2d 808, 813-14 (Ind. Ct. App. 2011).

Indiana Code Section 31-37-18-6 reads,[4]

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
> > (A) in the least restrictive (most family like) and most appropriate setting available; and
> >
> > (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
>
> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

C.W. contends that at least two less restrictive, more family-like dispositional alternatives were available to the trial court: allow C.W. to return home and participate in a structured treatment program and individual counseling or

---

[4] C.W. incorrectly cites Indiana Code Section 31-34-19-6, which governs dispositional decrees in proceedings involving children in need of services.

allow C.W. to enroll in a residential facility for drug treatment. We note that Section 31-37-18-6 requires placement in the least restrictive setting only "[i]f consistent with the safety of the community and the best interest of the child." Thus, the statute recognizes that in certain situations the best interest of the child is better served by a more restrictive placement. *K.A. v. State*, 775 N.E.2d 382, 386-87 (Ind. Ct. App. 2002), *trans. denied*. In other words, a more restrictive placement may be appropriate because commitment to a public institution is in the best interest of both the juvenile and society. *D.S. v. State*, 829 N.E.2d 1081, 1085 (Ind. Ct. App. 2005); *see also M.R. v. State*, 605 N.E.2d 204, 208 (Ind. Ct. App. 1992) ("There are times in juvenile proceedings when the best interest of the juvenile and society require commitment to the Boys School.").

[18] Here, the evidence shows that C.W. has been adjudicated a delinquent child on three separate occasions beginning in 2015 and has two additional pending cases. In June 2017, he admitted to possessing a handgun without a license, a class A misdemeanor if committed by an adult. Many less restrictive rehabilitative services have been offered to C.W., including probation, home-based services, and residential care. However, given his repeated disobedience of the law, those efforts have apparently failed to produce positive changes in his behavior. In addition, his drug use is alarming. Just twelve days after he was granted probation, he engaged in the same behavior that led to the current adjudication, consuming Xanax-laced gummy bears. The first time he ingested them, his mother testified that he was so intoxicated that he was foaming at the

mouth and had to be carried to his cell. Tr. Vol. 2 at 15-16. Mother, the trial court, and C.W.'s probation officer later referred to this as a drug overdose. *Id.* at 46-47. The next time, he was picked up on the street at 4:00 a.m., stumbling on the sidewalk, disoriented, confused, and drooling from his mouth. *Id.* at 29-30.

[19] C.W. has been disruptive at school or has simply failed to attend. Thus, he is not getting the education he needs. C.W.'s history also shows that his parents have been unable to control, let alone improve, his behavior. Based on his history with the juvenile justice system and his current behavior, the court reasonably determined that a supervised environment offering more intensive services is necessary to prevent C.W. from continuing to commit acts that are harmful to himself and that pose a danger to the community. Therefore, we conclude that the trial court did not abuse its discretion in ordering the wardship of C.W. to the DOC. *See A.M. v. State*, 109 N.E.3d 1034, 1039 (Ind. Ct. App. 2018) (concluding that trial court did not abuse its discretion in modifying juvenile's disposition to commitment to the DOC based on his lengthy record of criminal and behavioral issues, failure to respond positively to less restrictive placements, loss of parental control, and expulsion from school); *K.A.*, 775 N.E.2d at 387 (concluding that trial court did not abuse its discretion in modifying juvenile's disposition to commitment to the DOC, where juvenile had been given several chances to reform her behavior). Accordingly, we affirm the Modified Dispositional Order.

Affirmed.

Baker, J., and Kirsch, J., concur.